**Barbara GILLESPIE, Plaintiff,**

**v.**

**The BOARD OF EDUCATION OF the NORTH LITTLE ROCK SCHOOL DISTRICT, NUMBER ONE OF PULASKI COUNTY, Mary A. Gosser As President and Representative of said Board; and George Miller, Superintendent of Schools of said School District, Defendants.**

**No. LR–C–80–364.**

United States District Court,
E. D. Arkansas, W. D.

Dec. 8, 1981.

John W. Walker, Little Rock, Ark., for plaintiff.

Robert V. Light, Little Rock, Ark., for defendants.

MEMORANDUM OPINION

WOODS, District Judge.

FINDINGS OF FACT

1. The plaintiff is a certified secondary guidance counselor with a Bachelor of Science degree in psychology from Henderson State Teachers College and a 1972 Master's degree in her field from the University of Arkansas.

2. Prior to her employment with the North Little Rock School District, plaintiff was last employed by the Pulaski County School District. She was not totally happy in this district and in July, 1979 through a friend secured an introduction to Mr. George Miller, Superintendent of the schools in the North Little Rock District, and made application for a counselor's position in the latter district.

3. In September, 1979 a vacancy occurred on the guidance counselor staff at Ridgeroad Junior High School. Plaintiff was contacted and interviewed by Ken Brooks, Director of Secondary Education. A day or two later she was interviewed by John Mears, Principal of Ridgeroad Junior High School.

4. After she resigned from the Pulaski County School District, plaintiff was offered and accepted a position as one of the two guidance counselors at Ridgeroad Junior High School for the 1979–80 school year.

5. At the time of her interviews with Brooks and Mears, plaintiff had been pregnant between four and five months. She did not disclose this fact to either of them because, as stated in her deposition, "I wanted to be able to prove myself before it was made known so that they could see what kind of a job that I could do without taking that much in." Her interviewers did not know that she was pregnant at the time they recommended her employment.

6. Approximately a week after reporting for her job assignment, she notified her principal Mears that she was pregnant and would require maternity leave.

7. Plaintiff was granted maternity leave by the District, which began on January 11, 1980.

8. On the same day that plaintiff's maternity leave began, she filed a claim with the Arkansas Employment Security Division. To qualify for benefits under the Arkansas Act, plaintiff must not only be unemployed but must also be available for work. Mrs. Gillespie was neither. She signed a form stating that she had quit her work, was unemployed and was available for work, all of which was false. She was actually on maternity leave toward which she had accumulated 16½ days of paid leave time. Mrs. Gillespie states that she did not realize the import of these declarations and was not familiar with the provisions of the Arkansas Employment Security Act. It is difficult for the Court to believe that a woman with a Master's degree in guidance counseling would not know that, to draw unemployment benefits, a claimant has to be unemployed and available for work. We find that plaintiff, with full knowledge, made application for unemployment benefits to which she was not entitled.

9. When Doyle Crownover, the Assistant Superintendent for Administration, received a copy of plaintiff's unemployment compensation claim, he wrote her a letter dated January 18, 1980 in which he expressed surprise that she had quit her job and that a replacement would have to be found.

10. Immediately upon receiving this letter, plaintiff went to see Crownover and advised that the unemployment claim was a "mistake" and that she would drop the claim. She subsequently did drop the claim.

11. Plaintiff in her testimony at the instant hearing related a bizarre version of her conversation with Crownover concerning her unemployment claim. She stated that Crownover asked if she wanted her job badly enough to sleep with her principal, or with Brooks, or with him. She stated that she refused each proposal. She also testified that Crownover asked her if the baby was Mr. Miller's. The Court finds that this version of her conversation with Crownover is a complete fabrication. In her deposition taken on October 15, 1980 she was questioned in great detail about the January conversation with Crownover. Her version at that time was that it related solely to the unemployment claim. After a number of questions by defense counsel about this aspect of their conversation, she was asked if "that was all that passed between the two of you all in that meeting." She replied that "this was the gist of the whole conversation." (Pl. Dep. p. 29; DX 28.) When asked why she had not related this conversation before, she stated that she had related it in a hearing on a motion for a preliminary injunction before the Court on December 10, 1980. My recollection was to the contrary. I have now gone over the tape of the hearing with my court reporter and find nothing in her testimony remotely resembling such a proposal on the part of Mr. Crownover. On cross examination she stated that the first person she told about Crownover's alleged proposal was her husband in February, 1981. Of course, she had already testified on direct examination that she had related it in the preliminary injunction hearing on December 10, 1980. We prefer to believe that Mrs. Gillespie did not deliberately commit perjury. She has been under psychiatric care for the last year, and

in our view the conversation with Crownover as now related by her is the fictional product of a troubled emotional state. In fact she stated that she did not recall this part of the conversation at all until about a year after it happened.

12. On March 6, 1980 the plaintiff filed a completed questionnaire sent to all employees to assist the District in planning for the 1980–81 school year. In this questionnaire she stated that she was not interested in an administrative, supervisory, or other position which would represent an advancement in salary.

13. Plaintiff ended her maternity leave in the middle of March, 1980 and returned to work.

14. Plaintiff was advised on or about April 3, 1980 by Mears that, due to declining enrollment, her position as guidance counselor was being abolished for the 1980–81 school year.

15. On April 10, 1980 plaintiff and her husband met with Brooks to discuss her future with the District.

16. At the April 10, 1980 meeting Brooks confirmed that, due to declining enrollment, the position of counselor at Ridgeroad Junior High School would have to be abolished. However, at this same meeting Brooks advised the plaintiff that she would be reassigned as a classroom teacher for the 1980–81 academic year.

17. At a regularly scheduled school board meeting held April 17, 1980, the District, by a majority vote of the school board, agreed to employ plaintiff as a classroom teacher for the 1980–81 academic year.

18. On April 21, 1980 by letter addressed to Brooks, plaintiff confirmed the April 10, 1980 meeting with him and advised Brooks that although she understood that she would be reassigned as a classroom teacher, she still was interested in a counseling position if one became available. (PX 6.)

19. Through error in the programming of the computer, a counseling position contract dated May 23, 1980 was prepared in plaintiff's name. (PX 1.)

20. Under cover of a form letter dated May 23, 1980 from Crownover (PX 8), the erroneous counselor's contract was forwarded to the plaintiff at her school. She immediately executed this contract and placed it in a tray in her school office used to transmit material to the District's administrative offices.

21. As soon as he became aware of the mistake, Crownover, by letter dated May 27, 1980, advised the plaintiff that the contract for the counselor's position had been prepared erroneously. (PX 2.) He enclosed a contract (PX 15) corrected to substitute classroom teacher for counselor as the subject position. He requested that she execute the corrected contract and return the erroneous contract.

22. On June 6, 1980 plaintiff sent Crownover a letter returning the corrected contract unexecuted and stating that she intended to assert her rights under the counselor contract.

23. Plaintiff's salary under the erroneous counselor contract would have been $16,043.28. Plaintiff's salary under the classroom teacher contract sent by Mr. Crownover with his May 27, 1980 letter would have been $14,439.00. The pay differential results because a counselor works ten months and a teacher nine months. The pay rate is the same. At the time plaintiff received the counselor contract, dated May 23, 1980, she knew or should have known that a mistake had been made and that the District had intended to employ her as a secondary teacher and not a counselor.

24. Plaintiff's refusal to return the May 23, 1980 counselor contract and her refusal to execute the May 27, 1980 secondary teacher contract were attempts to take advantage of a clerical computer error.

25. Mr. George E. Miller wrote plaintiff on June 26, 1980 and notified her that, because of her attempt to take advantage of the error in the preparation of the 1980–81 contract, he would recommend at the July 24, 1980 school board meeting that the North Little Rock School Board "terminate" any contractual relationship existing with the plaintiff.

26. On July 25, 1980 by certified mail, Mr. Miller notified the plaintiff that she had been "terminated" by the board at the meeting referred to above.

27. The following is a recapitulation of applicants and new hires for positions in the North Little Rock School District listed by sex:

APPLICANTS

|  |  |  | TOTALS |
|---|---|---|---|
| 1977 | Male | 21 |  |
|  | Female | 116 | 137 |
| 1978 | Male | 144 |  |
|  | Female | 420 | 564 |
| 1979 | Male | 143 |  |
|  | Female | 467 | 610 |
| 1980 | Male | 69 |  |
|  | Female | 362 | 431 |
| 1981 | Male | 58 |  |
|  | Female | 264 | 322 |
| TOTALS |  |  | 2,064 |

NEW HIRES

Personnel Hired in 1976–77
Male – 18, Female – 53     TOTAL – 71

Personnel Hired in 1977–78
Male – 10, Female – 64     TOTAL – 74

Personnel Hired in 1978–79
Male – 19, Female – 66     TOTAL – 85

Personnel Hired in 1979–80
Male – 21, Female – 73     TOTAL – 94

Personnel Hired in 1980–81
Male – 11, Female – 56     TOTAL – 67

Personnel Hired in 1981–82
Male – 4, Female – 24     TOTAL – 28

28. The breakdown of certified personnel employed by the District in the school years 1976–77 through 1979–80 is as follows:

|  | MALE | FEMALE |
|---|---|---|
| 1976–77 | 169 | 544 |
| 1977–78 | 171 | 564 |
| 1978–79 | 187 | 733 |
| 1979–80 | 139 | 555 |

29. As of December 1, 1981 there were thirteen counselors employed by the North Little Rock School District. Eleven of these are full-time counselors, and two are part-time counselors. All of the full-time counselors are women. Both the part-time counselors are men, one of whom spends one-third of his time in counseling and another one-half.

30. Males and females holding the same positions in the North Little Rock School District are paid the same salary.

31. Since 1961 there have been forty-two promotions in the District of which twenty-four have been of women and eighteen of men. Miller explained the disproportionate percentage of promotions among males in relation to the total number of employees by the fact that it has been the experience of the North Little Rock School District that males who are pursuing careers in education are often the principal family breadwinners. Women teachers in the North Little Rock District, on the other hand, have frequently taken teaching jobs to supplement family income and leave when this is no longer necessary or they are faced with the exigencies of raising a family. We regard this as a logical explanation and find as a matter of fact that there has been no discrimination based on sex in promotions in the North Little Rock School District. We make this finding, not unmindful of the fact that plaintiff had previously advised the school administrator on March 6, 1980 that she was not interested in a promotion of any kind.

32. The plaintiff calls attention to the predominance of males in the upper administrative levels of the District and among secondary principals in contrast to the predominance of females among elementary principals. Defendant Miller explained this discrepancy on the basis of the factors noted in the finding immediately, *supra*, and on the fact that very few women in the North Little Rock School District qualified themselves in the area of secondary school administration. Mr. Miller testified that while the number of women acquiring these qualifications is increasing, in the past the numbers have been quite small. Only a few women have in the past expressed interest in such positions, and an even smaller number possessed the requisite qualifications. Mr. Miller's testimony has not been refuted by plaintiff. We, therefore, find that sex discrimination has not been established by the absence of significant numbers of women in the higher level of administration and

among the principals of the secondary schools of the District. Again, we are not unmindful of the fact that plaintiff has not sought an administrative position or a position as principal in the District. On March 6, 1980 she specifically disclaimed any desire for such advancement.

33. A great deal of plaintiff's testimony has been directed toward the alleged preferment of one Kathy Morledge for a counselor position at Poplar Street School at a time when the plaintiff was better qualified but had been assigned to a teaching position. We are satisfied with the objective reasons given for the assignment of Ms. Morledge but hardly see the necessity for exploring them in detail. Both Morledge and plaintiff are women, and any discrimination could not be based on sex.

34. The defendants have not discriminated against plaintiff on the basis of sex. The defendants were justified in reducing the staff of counselors at Ridgeroad School to one. The remaining counselor was a woman and possessed both more experience and more seniority. Defendants did not discriminate against plaintiff by offering her a teaching job in the District after it became necessary to reduce the counselor's staff at Ridgeroad School. She was offered a position in the District at the same monthly salary. The only difference in salary is that the counselor would be paid for ten months and the teacher for only nine. The District was not required to rehire plaintiff at all since her contract was only for the 1979–80 school year.

35. Plaintiff was not the subject of discrimination because of pregnancy. Although she concealed her pregnancy when she came to work, the North Little Rock District permitted her to take full maternity leave. Defendants adduced proof that they have granted maternity leave to scores of its employees. There is no evidence whatsoever in this regard that the North Little Rock District discriminated against pregnant women. The defendants did object to the fact that plaintiff concealed information concerning her pregnancy. Their position is that, whether or not this infor-

mation would have disqualified her from employment (and they deny that *ipso facto* it would have disqualified her), they were entitled to have a disclosure of the facts. We agree that she displayed a lack of commendable candor, but we find no evidence that she was penalized by the District for this conduct.

36. Plaintiff has failed to demonstrate that there exists a class of women either with claims typical to the plaintiff's or with claims having common questions of law and fact with plaintiff of sufficient numbers to prevent joinder.

37. Plaintiff's claim is so peculiarly contractual in nature, she would be unable to adequately protect a class of discriminatees even assuming such a class existed.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this 42 U.S.C. § 1983 and 42 U.S.C. § 2000e action pursuant to 28 U.S.C. § 1343.

2. Defendants have attempted to make an issue out of the naming of the proper entity as the representative defendant in this case. While no amendment has been formally tendered to the court, all of the proof in this case (not directed at George Miller personally) has been directed at the North Little Rock School District, which is conceded to be the proper representative entity. Therefore, I have considered the merits of plaintiff's claim against the North Little Rock School District.

3. In the case at bar, I do not believe that plaintiff has made even a prima facie case of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended in 1972, 42 U.S.C. § 2000e–2(a)(1), which prohibits employers from discriminating "because of . . . sex." Nor did she establish any violation of 42 U.S.C. § 1983. Assuming, however, that she made a prima facie case, I find that the defendants have articulated a legitimate nondiscriminatory reason for not renewing her contract as counselor. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). I further find that

the reasons given therefor were not pretextual. *Furnco Construction Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). The plaintiff has failed to sustain by a preponderance of the evidence the ultimate burden of both proof and persuasion as required by *Texas Dept. of Community Affairs v. Burdine,* 405 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Judge Arnold recently had occasion to review the law concerning Title VII sex discrimination in *Campbell v. Ramsay,* 484 F.Supp. 190 (1980), *affirmed* 631 F.2d 597 (8th Cir. 1980). Reference is made to Judge Arnold's District Court opinion and the Court of Appeals per curium affirmance for a thorough review of the authorities. Plaintiff's claim under 42 U.S.C. § 1983 likewise must be rejected for failure to prove discriminatory intent. *Campbell v. Ramsay, supra,* 484 F.Supp. 190, 194 (1980). I find no basis in the evidence to substantiate a class action claim. Rule 23, Fed.R.Civ.P. Having found that plaintiff has not established a valid claim for relief under Title VII or 42 U.S.C. § 1983, I assume pendent jurisdiction and decide the breach of contract claim by reference to the Arkansas authorities.

4. Traditional contract principles apply to teacher employment cases and are not rendered inapplicable by "The Teacher Fair Dismissal Act of 1979" (Ark.Stat.Ann. § 80–1264 et seq.) or "The Arkansas Teachers' Salary Law" (Ark.Stat.Ann. §§ 80–1301 et seq.). *Johnson v. Wert,* 225 Ark. 91, 279 S.W.2d 274 (1955).

5. The District is entitled to rescind the May 23, 1980 counselor contract. The District proved by clear and convincing evidence that the contract was the product of the District's non-negligent mistake which was known by the plaintiff or was so gross a mistake that plaintiff is chargeable with knowledge. *Foster v. Dierks Lumber & Coal Co.,* 175 Ark. 73, 298 S.W. 495 (1927); *James v. Centex Construction Co.,* 255 F.Supp. 508, 512 (E.D.Ark.1966), *affirmed* 374 F.2d 921 (8th Cir. 1967); and *Paul Hardeman, Inc. v. Arkansas Power & Light Co.,* 380 F.Supp. 298, 326 (E.D.Ark.1974). Because of plaintiff's conduct it would be unconscionable to allow her to take advantage of this mistake.

6. Ark.Stat.Ann. § 80–1304(b) requires, subject to certain exceptions, that a school district give written notice to a teacher of its intent not to renew a teaching contract on the same terms and conditions as the immediately preceding teaching contract between the parties.

7. Mr. Crownover's letter to plaintiff (enclosing the corrected secondary teaching contract) dated May 27, 1980, taken in conjunction with her meetings with Mr. Mears and Mr. Brooks, constituted substantial compliance with the provisions of Ark.Stat. Ann. § 80–1304(b).

8. At the close of all the evidence, plaintiff's counsel moved to amend the complaint to allege a due process claim in that plaintiff was not afforded a hearing. I took the matter under advisement and, under the liberal provisions of Rule 15(b) Fed. R.Civ.P., now permit the amendment. I have, therefore, considered the merits of plaintiff's claim that she was entitled to a due process termination hearing pursuant to Ark.Stat.Ann. § 80–1264.5 (1980 Repl. Vol.). The right to such a hearing presupposes that a contractual relationship exists to be terminated. No such relationship is present in this case. The May 23, 1980 contract was rescinded by the district. Plaintiff was notified of her non-renewal as a counselor by Mr. Crownover's letter of May 27, 1980, and plaintiff refused to execute the secondary teacher contract forwarded with Mr. Crownover's May 27 letter. Therefore, no contractual relationship existed to require termination and a hearing. The fact that Mr. Miller's June 26, 1980 and July 25, 1980 letters spoke in terms of "termination" is not binding on the court. The determination of whether or not a termination is involved is a matter of law for the court.

9. Judgment will be entered for defendant on plaintiff's individual claim, and her motion to certify class is denied.