Marvin V. PEARROW and Joann Pearrow, Husband and Wife *v.* Irene FEAGIN, Individually and as Administratrix of the Estate of Lester H. Feagin

89-124                                                  778 S.W.2d 941

Supreme Court of Arkansas
Opinion delivered October 30, 1989
[Rehearing denied December 4, 1989.*]

---

*Hickman, J., not participating.

*Murphy, Post, Thompson, Arnold and Skinner*, by: *J.T. Skinner* and *Blair Arnold*, for appellants.

*Jerry Cavaneau*, for appellee.

DAVID NEWBERN, Justice. The appellants, Marvin V. and Joann Pearrow, appeal from a judgment foreclosing a mortgage in favor of Lester H. or Irene Feagin. The action was brought by the appellee, Irene Feagin, on behalf of herself and the estate of Lester H. Feagin, her deceased husband. The Pearrows contend the chancellor erred with respect to several evidentiary rulings and in striking their counterclaim for usury as well as in finding they did not sustain the burden of proving their defense of payment. We affirm because the arguments on the evidentiary issues made on appeal were not made, or are different from the ones made, in the trial court, and because the chancellor did not clearly err in concluding the Pearrows' proof failed with respect to payment and usury.

The mortgage and a note for $14,700 at 10% interest per annum were executed by the Pearrows on June 1, 1983. Payment was due June 1, 1984. Lester Feagin died April 24, 1985. His daughter, Linda Brimer, testified that she found the note and mortgage shortly thereafter in a file among Mr. Feagin's papers. There were other notes and mortgages in the file. Some of them contained payment notations, but none of them were marked "paid in full." There were no payment notations on the note and

mortgage being considered in this case.

Ms. Brimer did not address the Pearrows personally but "had someone contact them" in 1987, some two and a half years after payment was due. She filed the mortgage for record on November 2, 1987. Marvin Pearrow's son, Joe Pearrow, visited Mrs. Brimer and told her Marvin Pearrow had paid the debt. He showed her three checks and notations made on a separate paper as evidence of payment. She was not convinced. Joe Pearrow retained the original documents he had shown Ms. Brimer. She made and kept a copy of the documents on one photocopy page which became plaintiff's exhibit 3. The exhibit shows that two of the checks, both dated December 12, 1983, in amounts of $16,604.80 and $3,220.86, were signed by Marvin V. Pearrow, but no payee was stated. The third check was signed by Joe Pearrow, naming Lester Feagin as payee, in the amount of $5,000.

At the trial, Marvin Pearrow presented an entirely different account as to how the debt was paid. He said it was paid by the proceeds of two checks, presented as exhibits, made out to "cash," both dated January 10, 1984. Both checks contained the word "fur" on the memo line. Marvin Pearrow and his sons are in the fur business. The reverse sides of the checks show they were negotiated, without endorsement, by the bank on which they were drawn on the date they were made.

Marvin Pearrow testified that he and Lester Feagin had had many business dealings over a 30-year period. The $14,700 obligation was a consolidation of the amount due on an earlier note, interest due on yet another debt on which Mr. Feagin had charged 15% interest, which would have been in excess of the legal limit, and some cash received by Mr. Pearrow in connection with a land deal which had fallen through. He testified he paid the obligation with the proceeds of the two "cash" checks in the presence of two of his sons who were his business partners.

Joe Pearrow testified he cashed the checks at the bank and the money was given to Lester Feagin. Another son, Vick Pearrow, testified he was present on January 10, 1984, when the payment was made and that his father did not get a receipt. In response to cross examination about his visit to Ms. Brimer and the other evidence of payment he had presented to her, Joe said

that had to do with a personal debt to Mr. Feagin which the Feagins had also tried to collect and nothing to do with the note and mortgage.

Other witnesses testified about having borrowed money on an informal basis from Lester Feagin. They testified they trusted Mr. Feagin and did not require receipts for payments.

## 1. The evidence rulings

In view of the evidence as to the informal manner in which Mr. Feagin did business, the Pearrows contend it was essential they be able to show why their note and mortgage were retained by Mr. Feagin even after the alleged date of payment. When Marvin Pearrow was asked why Mr. Feagin retained the note and mortgage, he began to say what Mr. Feagin had told him. A hearsay objection was sustained. Mr. Pearrow's testimony was then proffered to the effect that Mr. Feagin had told him he needed the documents for an IRS audit.

When the chancellor made his ruling excluding the decedent's testimony, the ruling was challenged on the basis of A.R.E. 804(b)(5). The argument on appeal is that it was an admission by a party opponent and thus admissible pursuant to Rule 801(d)(2) or that it was a declaration against interest and thus admissible pursuant to Rule 804(b)(3). The chancellor thus had no opportunity to consider the arguments made here. This court will not permit arguments to be raised for the first time on appeal. *National Lumber Co.* v. *Advance Development Corp.*, 293 Ark. 1, 732 S.W.2d 840 (1987); *Wasp Oil, Inc.* v. *Arkansas Oil and Gas, Inc.*, 280 Ark. 420, 658 S.W.2d 397 (1983).

The court also sustained a hearsay objection to a question put to Marvin Pearrow on direct examination as to whether Lester Feagin wanted to "deal by check." The ruling was not challenged, and no response was proffered.

In response to a question on direct examination, Vick Pearrow testified that when Marvin Pearrow gave Lester Feagin the money, Marvin Pearrow said, "We're paid in full, Lester," and Mr. Feagin said, "Yes, sir, we are." Again a hearsay objection was sustained, and the ruling went unchallenged.

Another hearsay objection was sustained when the Pearrows presented the testimony of Carl Elliott. His proffered testimony was that Charles Pearrow, who was a son-in-law of Lester and Irene Feagin, and who, for a time, represented the Feagins' interests in this matter, told Mr. Elliott it would be advisable for him not to testify. There was no discussion of the court's ruling excluding the evidence, and thus no exception to the hearsay rule was presented as a basis for admitting the statement.

█ Unless a party has no opportunity to object to a ruling of the court, an objection must be made at the time of the ruling, and the objecting party must make known to the court the action desired and the grounds of the objection. That was the essence of § 21 of Act 555 of 1953 which did away with the need for "showing exceptions" to trial court rulings and which has been superseded by and repeated in Ark. R. Civ. P. 46. See *Hammond* v. *Peden*, 224 Ark. 1053, 278 S.W.2d 96 (1955), which applied the requirement to the failure to make an objection to a ruling excluding evidence, and *Missouri Pacific Railroad Co.* v. *McDaniel*, 252 Ark. 586, 483 S.W.2d 569 (1972), a similar holding, where we noted that Act 555 was taken from F.R.C.P. 46 which served as the model for our current rule.

All of the excluded statements clearly fell within the general purview of the hearsay rule. We hold that if the Pearrows took exception to the rulings of the court they should have stated the bases for their objections to the chancellor so that he could have had an opportunity to consider them rather than raise them for the first time on appeal.

## 2. Usury

The chancellor struck the Pearrows' amended answer, which contained their usury counterclaim, on the ground that the Pearrows had obtained a continuance through a misrepresentation to the court about unavailability of a witness, and that the amended answer and counterclaim would not have been timely but for the continuance. The Pearrows argue here that the chancellor's finding of misrepresentation was clearly erroneous because they had sought a continuance on the basis of unavailability of two witnesses. The argument is that the continuance was justified on the basis of the unavailability of at least the one witness with respect to whom the chancellor made no finding of

misrepresentation.

■ The answer and counterclaim were not struck when the motion to strike was made or at the outset of the trial. Rather, the chancellor reserved ruling on the motion until the conclusion of the trial. In his order the chancellor stated that even if the counterclaim had been allowed, the proof was insufficient to sustain the allegation of usury. This alternative ruling is not challenged on appeal. We are given no basis for holding that it was clearly erroneous or clearly against the preponderance of the evidence.

## 3. Proof of payment

The Pearrows argue the chancellor's finding that they failed to show payment was clearly erroneous. In his order, the chancellor stated:

> The defense of payment is an affirmative defense and the burden is on Defendants to prove payment by a preponderance. After considering the evidence and the credibility of the witnesses, the Court is of the opinion that Defendants have not met their burden of proof.

■ Ark. R. Civ. P. 52(a) provides, in part: "Findings of fact shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." It is apparent that the chancellor did not find the testimony in favor of the Pearrows to have been credible, and we have no reason to say his evaluation was clearly erroneous. *Hackworth* v. *First National Bank of Crossett*, 265 Ark. 668, 580 S.W.2d 465 (1979); *Massey* v. *Price*, 252 Ark. 617, 480 S.W.2d 337 (1972).

Affirmed.

HICKMAN, J., not participating.