Patricia LOVE *v.* SMACKOVER SCHOOL DISTRICT et al.

94-1338                                    907 S.W.2d 136

Supreme Court of Arkansas
Opinion delivered October 9, 1995
[Petition for rehearing denied November 20, 1995.*]

---

*Brown, J., would grant.

2

*Mitchell, Blackstock & Barnes*, by: *Marcia Barnes*, for appellant.

*W. Paul Blume*, for appellees.

BRADLEY D. JESSON, Chief Justice. This case presents a question under the Teacher Fair Dismissal Act, codified at Ark. Code Ann. § 6-17-1501 to 1510 (Repl. 1993). Appellant Patricia Love claims on appeal that she was entitled to notice that her contract with the district would not be renewed for the 1993-94 school year. The trial judge determined that Ms. Love was not a "teacher" as contemplated by the Fair Dismissal Act and therefore not entitled to notice of nonrenewal. We reverse on that point and hold

that Ms. Love was a teacher under the language of the Act. Since the trial judge did not expressly rule on the amount of compensation to which Ms. Love is entitled, we remand to allow that determination.

On December 11, 1992, district superintendent Russell Johnson wrote a memo to the school board indicating the need to hire a "half-time, long-term substitute" for the sixth grade at Smackover Elementary School. The full-time teacher was being reassigned to new duties for half a day as assistant principal. The board met on December 16, 1992, and, according to minutes of that meeting, voted that the district hire a "half-time, long-term replacement."

Ms. Love, who has a degree in elementary education, had been student teaching at Smackover Elementary. Upon being informed that the half-time teaching position was available, she visited the office of superintendent Johnson on December 19, 1992, and signed a contract. The contract provided that the district, by a majority vote of directors present at the December 16 meeting, agreed to employ Ms. Love as a "half-time elementary teacher" for a period of 89 days at a salary of $4,005.00. The contract further provided as a condition of employment that Ms. Love have a state teaching certificate. The contract was signed on behalf of the district by use of rubber stamp signatures of the board president and secretary.

During the eighty-nine days of her contract, Ms. Love signed in daily on the teacher, rather than the substitute, sign-in sheet. She was given a form for the teacher retirement program, her own lesson-plan book, and sick leave. Other teachers considered her a member of the teaching staff. On occasion she also substituted for other teachers on her afternoons off for which she was paid by separate check.

The contract period was completed in June of 1993. Ms. Love learned in July that she would not be rehired for the position in the coming year. In April of 1994, she filed suit in Union County Circuit Court. She alleged that, because she had not received notice of nonrenewal by May 1, as mandated by Ark. Code Ann. § 6-17-1506(a) (Repl. 1993), her contract was automatically renewed.

A hearing was held at which superintendent Johnson and

school board members testified that they had only intended to hire a long-term substitute, not a full-fledged teacher. The trial court agreed with the district, finding that Ms. Love was not a teacher covered by the Fair Dismissal Act. In ruling from the bench, the court found that the district had no intention of hiring anyone other than a substitute and that those portions of the contract which indicated otherwise were simply clerical errors.

The term "teacher" is defined simply and precisely by the language of the Act. Any person, other than a superintendent or assistant superintendent, employed in an Arkansas public school district, who is required to hold a state teaching certificate as a condition of employment, is a teacher. Ark. Code Ann. § 6-17-1502(a)(1) (Repl. 1993). Ms. Love was employed by the district and required to be certified. She therefore met the Act's two criteria and was, for its purposes, a teacher. It does not matter if she was denominated a part-time teacher, a half-time teacher, or a replacement. The Act makes no such distinction in its definition. It simply provides that if *any person* is employed by the district and required to be certified, that person is a teacher, and the applicable provisions of the Act are triggered. See *Western Grove Sch. Dist.* v. *Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994). In that case, we considered the certification requirement in determining whether a coach was a teacher under the Act.

Arkansas Code Annotated § 6-17-1506(a) (Repl. 1993) provides that every contract between a teacher and the board shall be renewed for the next school year unless the teacher is notified of nonrenewal by May 1 of the contract year. It is undisputed that Ms. Love did not receive this statutory notice. Therefore she is entitled to the remedies provided by the Act.

The district argues that Ms. Love's contract should be void because there was either a mistake among the parties as to her status or that Ms. Love knew she was only to be a substitute. There is disputed evidence on this point. But ultimately, what the parties thought about the longevity or renewability of the contract is of little consequence in this instance. Arkansas law requires that school districts strictly comply with the notice provisions of the Act. Ark. Code Ann. § 6-17-1503 (Repl. 1993); *Hamilton* v. *Pulaski County Sp. Sch. Dist.*, 321 Ark 261, 900 S.W.2d 205 (1995). As a matter of law, once Ms. Love was employed by the district and required by the terms of her con-

tract to be certified, she was covered by the Act.

The district further argues that superintendent Johnson did not have the authority to enter into the contract with Ms. Love. This argument is based upon the provisions of Ark. Code Ann. § 6-13-620(4)(A) (Repl. 1993), assigning to school boards the power to employ and make contracts with teachers. The school board, it is claimed, did not in this instance hire Ms. Love because Ms. Love's name was not mentioned at the board meeting or in the minutes. It is true that Ms. Love was not hired at the school board meeting by name. However, the board approved a recommendation that a half-time replacement be hired. Ms. Love was employed for that position three days later. The superintendent executed this decision using a standard teacher form contract bearing the rubber stamped signatures of the board president and secretary. (The use of these stamped signatures was authorized by the board.) Nothing in the law requires the board to actually name the person it purports to employ. In fact, superintendent Johnson and board members testified that, while the board, as a matter of custom, usually designated the teachers it would hire by name, there were exceptions. In short, Ms. Love had a written contract signed by board members containing provisions which entitled her to assert her rights under the Teacher Fair Dismissal Act.

Because the trial judge ruled that Ms. Love was not covered by the Act, she did not have the opportunity to address the question of damages. We remand the case so that this determination can be made in light of our ruling. See *Carson* v. *Hercules Powder Co.*, 240 Ark. 887, 402 S.W.2d 640 (1966).

Reversed and remanded.

BROWN and ROAF, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. The majority reverses without discussing these findings of fact by the circuit court: (1) Patricia Love was hired by the Smackover School District as a long-term substitute teacher and not as a teacher under the Teacher Fair Dismissal Act; (2) the School District had no intention of hiring Ms. Love as a permanent teacher; and (3) the evidence indicates that Ms. Love knew she was hired only as a substitute and not as a permanent teacher. The majority reverses without addressing the crucial issue in this case which is whether the cir-

cuit court's factual findings are clearly erroneous. *See Wood* v. *Corner Bank*, 315 Ark. 200, 866 S.W.2d 385 (1993); *Wilson* v. *Allen*, 305 Ark. 582, 810 S.W.2d 42 (1992); *Sturgis* v. *The Lee Apparel Co.*, 304 Ark. 235, 800 S.W.2d 719 (1990); *Taylor's Marine, Inc.* v. *Waco Manuf., Inc.*, 302 Ark. 521, 792 S.W.2d 286 (1990); *City of Crossett* v. *Switzer*, 302 Ark. 239, 788 S.W.2d 738 (1990). It was the circuit court, of course, that heard all the evidence and observed witness demeanor. Moreover, on appeal we have stated time and again that we view the evidence in the light most favorable to the appellee. *See, e.g., Rich Mountain Elec. Coop.* v. *Revels*, 311 Ark. 1, 841 S.W.2d 151 (1992); *City of Pocahontas* v. *Huddleston*, 309 Ark. 353, 831 S.W.2d 138 (1992); *Jernigan* v. *Cash*, 298 Ark. 347, 767 S.W.2d 517 (1989); *McCartney* v. *McLaughlin*, 296 Ark. 344, 756 S.W.2d 907 (1988). Despite this authority, the majority opinion does not explain why the clearly erroneous rule is not applicable.

What decides the case for the majority is a question of law — the existence of a written document entitled "contract." The decision looks no further than that, even though the litigation at trial centered on whether the contract was a mistake and on whether Love knew that she was hired as a long-term substitute teacher and not as a regular teacher. While the majority's approach has the appeal of simplicity, it discounts the considerable evidence that no permanent teacher contract was intended by the School District and Ms. Love and that Ms. Love was aware that she was hired solely as a substitute. A compendium of that evidence follows:

1.  When Ms. Teri Philyaw moved into a half-time administrative position with the school in January 1993 due to increased enrollment, a long-term substitute teacher was needed for Ms. Philyaw's morning classes. That is the position that Ms. Love filled.

2.  There was uncertainty about whether the increased enrollment would continue into the 1993-94 school year.

3.  Ms. Love was hired from January 25, 1993, to June 4, 1993, to teach half days at one-half the pay of a long-term substitute teacher, which was $45 per day for total compensation of $4,005. This pay was less than the pay for a half-time regular teacher.

4. The School Board never voted to hire Ms. Love as a regular teacher.

5. Ms. Love knew that the half-time position she was filling might not exist for the following school year.

6. On May 21, 1993, Ms. Love applied to the Smackover School Superintendent for a half-time sixth grade teaching position "currently available" or "any other half-time and/or full-time positions that may become available in the future." She was not hired.

7. On August 19, 1993, Ms. Love applied to the Smackover School Superintendent for a teacher's aide position as well as any other position that might be available. She was not hired.

8. On April 4, 1994, Ms. Love filed suit in circuit court for declaratory relief and a writ of mandamus.

The majority decides the issue of teacher status solely as a matter of law because Ms. Love was issued a "contract." I cannot submit to that rigidity. The facts must control this case. But under the majority's rationale, it would make no difference how vast and conclusive the facts were supporting Ms. Love's substitute status or how egregious the error was in issuing the contract.

The federal district court has recognized that the mere issuance of a contract did not control in an analogous situation. *See Gillespie* v. *Board of Educ. of North Little Rock*, 528 F.Supp. 433 (E.D. Ark. 1981), *affirmed* 692 F.2d 529 (8th Cir. 1982). In *Gillespie*, a guidance counselor for the school was mistakenly issued a counselor contract. She had previously been informed that the guidance counselor position would be eliminated due to declining enrollment at the school and that she would be employed as a regular teacher at less pay. She sought to enforce the guidance counselor contract under the Teacher Fair Dismissal Act. The district court and court of appeals, however, recognized that a clerical mistake had been made in issuing the contract and held in favor of the school district. That type of analysis, where the facts are examined, should be followed in the instant case.

Now Ms. Love presumably will be reinstated to serve 89 days as a half-time teacher at some point in the school year irrespective of whether Ms. Philyaw has returned to the classroom

full time or not, or paid an equivalent amount. The awkwardness of such a remedy points up the fact that the Teacher Fair Dismissal Act simply did not contemplate the automatic renewal of long-term substitute teachers for successive school years where contracts are erroneously issued.

I would look to the facts to decide this case and respectfully dissent.

ROAF, J., joins.