Garrett SHEETS v. DOLLARWAY SCHOOL DISTRICT

CA 02-772                                    120 S.W.3d 119

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered June 18, 2003

*Mitchell, Blackstock, Barnes, Wagoner, Ivers and Sneddon,* by: *Marcia Barnes,* for appellant.

*W. Paul Blume,* for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Garrett Sheets, appeals the trial court's dismissal with prejudice of his complaint to enforce his teacher employment contract. For reversal, appellant argues (1) that appellee, Dollarway School District, breached the written contracts between the parties for the 1999-2000 and 2000-01 school years when it failed to strictly comply with the Teacher Fair Dismissal Act (TFDA or the Act) and its own personnel policies; and (2) that his contract was automatically renewed on May 21, 2000, and thus, he was a "teacher" as defined by the TFDA during the 2000-01 school year and entitled to the benefits of the Act regardless of the duties relegated to him. We reverse in part and affirm in part.

### Procedural History

On July 27, 1999, appellant entered into a written teacher's contract with appellee. The contract provided that appellant was to receive a $28,250 salary as the junior high in-school suspension teacher, the junior high head basketball coach, the assistant junior high football coach, and the assistant senior high baseball coach for the 1999-2000 school year. Superintendent Thomas Gathen later reassigned appellant to two elementary physical education classes in lieu of the two in-school suspension classes. In January of 2000, appellant was reassigned from head junior high basketball coach to assistant junior high basketball coach. His salary was not affected by his job reassignments.

On April 11, the Dollarway School Board voted to discontinue appellant's coaching duties as head junior high basketball coach for the 2000-01 school year. Appellant was presented with

a new "teacher's contract" on May 12, 2000, which stated his duties would be "Middle/Jr. High Teacher." The new contract provided that appellant would be paid $23,400 as a classroom teacher and would work as the physical education instructor and in-school suspension monitor. This contract did not provide for appellant to perform coaching duties or for payment of any coaching duties. This decrease resulted in appellant incurring a net salary reduction of $4,850. Appellant refused to sign the contract and opted, instead, to endorse his previous contract for the 1999-2000 school year. After asking for a hearing on the nonrenewal of his coaching duties, the school board held a hearing on June 8, 2000, and again voted not to renew appellant's coaching contract. During the summer, appellee's superintendent offered appellant the assistant coach position with the football and baseball teams and an additional payment of $4,200, but appellant declined the offer. Appellant did, however, continue to work as the in-school suspension monitor for the 2000-01 school year.

On August 22, 2000, appellant filed a petition for a writ of mandamus alleging that appellee breached its contract with appellant by violating the TFDA and that such breach entitled appellant to all the monetary benefits which he had under the 1999-2000 contract, plus interest and attorney's fees. Appellant later amended his complaint to include a claim for breach of contract.

When appellant's contract was not renewed for the 2001-02 school year, appellant amended his complaint on July 23, 2001, alleging that the district had once again failed to strictly follow the provisions set out in the TFDA and such failure was a breach of his 2000-01 contract. After trial on October 24, 2001, both parties submitted briefs and findings of fact and conclusions of law. On March 20, 2002, the trial court, finding for Dollarway School District, accepted as its judgment appellee's proposed finding of fact and conclusions. From that order comes this appeal.

The trial judge found that appellant was a "probationary teacher" as defined by Arkansas Code Annotated section 6-17-1502(a)(2) (Repl. 1999) and was, therefore, ineligible to appeal under the provisions of the TFDA. The trial court also concluded that because appellant was a probationary teacher the school dis-

trict was not held to a standard of strict compliance mandated by Arkansas Code Annotated section 6-17-1503 (1999). He reasoned that allowing a probationary teacher to superimpose the "strict compliance" standard of the Act on the breach-of-contract action would extend the benefits granted by the Act for a period of time equal to the statute of limitations for a contract claim. The trial judge held that appellant must prove by a preponderance of the evidence that appellee materially breached his contract.

The trial judge then compared the five-year statute of limitations for a contract claim to the specific time limitations of seventy-five days for an appeal by a nonprobationary teacher and concluded that the legislature did not intend to give probationary teachers a greater period of time to bring a common-law cause of action than nonprobationary teachers had to bring an appeal of the decision of the board.

The trial court further found that even assuming that appellant was entitled to judgment on the contract, he had failed to mitigate his damages by refusing to accept the offer of additional coaching duties with the district or the offer of employment from the Altheimer Unified School District. Last, the trial court determined that appellant was not a teacher, probationary or otherwise, during the 2000-01 school year because his position of in-school suspension monitor did not require certification as a condition precedent to employment.

### Teacher Fair Dismissal Act

■ Upon review, although we are mindful that it is not the function of the appellate court to substitute its judgment for the trial court, the question of whether or not a school district has strictly complied is a question of law. *Jackson v. Eldorado Sch. Dist.*, 74 Ark. App. 433, 48 S.W.3d 588 (2001).

■ The TFDA defined "teacher" as one employed by an Arkansas public school district who is required to hold a teaching certificate from the Department of Education as a condition to employment. "Probationary teacher" is defined as one who has not completed three successive years of employment in the district in which the teacher is currently employed; further, a teacher is

deemed to have completed the probationary period by employment in an Arkansas school district for three years. Ark. Code Ann. § 6-17-1502(a)(1) and (2) (Repl. 1999).

Arkansas Code Annotated section 6-17-1506 (Repl. 1999) provides:

> (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein, which renewal may be made by an endorsement on the existing contract instrument unless:
>
> (1) By May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed;
>
> . . .
>
> (2)(A) A notice of nonrenewal shall be delivered in person to the teacher or mailed by registered or certified mail to the teacher at the teacher's residence address . . . .
>
> (B) The notice of recommended nonrenewal of a teacher shall include a statement of the reasons for the recommendation, setting forth the reasons in separately numbered paragraphs so that a reasonable teacher can prepare a defense . . . .

Arkansas Code Annotated section 6-17-1503 (Repl. 1999) states in pertinent part:

> A nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void unless the school district strictly complies with all provisions of this subchapter and the school district's applicable personnel policies.

Arkansas Code Annotated section 6-17-1504 (Repl. 1999) states:

> (a) Each teacher . . . must be evaluated in writing annually.
>
> (b) Evaluation criteria and procedures shall be established in the manner prescribed in subchapter 2 of this chapter.
>
> (c) Whenever a superintendent . . . believes or has reason to believe that a teacher is having difficulties or problems meeting the expectations of the district . . . and [the superintendent] believes the problems could lead to termination or nonrenewal of contract, the administrator shall bring the problems and difficulties to the

attention of the involved in writing and shall document the efforts which have been undertaken to assist the teacher . . . .

For reversal, appellant asserts that the school district failed to strictly comply with the TFDA and its own personnel policies and such failure breached both the 1999-2000 and the 2000-01 teacher's contracts. Appellant states that the district violated Arkansas Code Annotated sections 6-17-1504(a) *et seq.* by failing to provide him with an annual teacher evaluation, notice of his nonrenewal of his contract and his right to a hearing before the school board on or before May 1 of the contract year, and a copy of the district's personnel policies. He further states that appellee denied him the right to a hearing before the school board voted to nonrenew his contract. Appellant also argues that the strict compliance standard equally applies to probationary teachers as well as nonprobationary teachers.

The application of the TFDA to a probationary teacher was addressed by our supreme court in *Love v. Smackover Sch. Dist.*, 322 Ark. 1, 907 S.W.2d 136 (1995). In that case, Love had worked as a certified teacher for a period of one year and was a probationary teacher as defined by Ark. Code Ann. § 6-17-1502. In July, she learned that she would not be rehired for her position in the upcoming school year. In April of the following year, she filed suit alleging that she had not received notice of nonrenewal by May 1 as is required by Ark. Code Ann. 6-17-1506(a) (Repl. 1993). Our supreme court determined that Love was a teacher as defined by the TFDA, and held that school districts must strictly comply with the notice provision of the TFDA. (*Love, supra* (citing Ark. Code Ann. § 6-17-1507)).

In *Foreman Sch. Dist. #25 v. Steele*, 347 Ark. 193, 61 S.W.3d 801 (2001), our supreme court considered another "probationary teacher" case. Steele, a first-year employee, received notice of a nonrenewal recommendation on March 21, 1994, citing various managerial and disciplinary problems as the basis for the nonrenewal recommendation for the school year of 1994-95. Steele requested a hearing, sought to obtain additional information about the basis of the nonrenewal recommendation, and asked for a five day extension of time to prepare for the hearing after receipt of the requested information. The district not only failed to agree to

an extension but also failed to hold a hearing before May 2, 1994, the tenth day after Steele's request for a hearing was made.

At the hearing held on May 6, 1994, Steele objected, noting that the hearing was outside the ten day period provided by the TFDA, and sought an automatic renewal of his contract for the 1994-1995 school year. The district refused to renew Steele's contract, and he filed a breach of contract action against the district. Both parties sought summary judgments. Following a hearing, the trial court granted Steele's motion, finding that his contract was automatically renewed because the school district failed to strictly comply with the TFDA which rendered the district's nonrenewal attempt void.

On appeal, the school district argued (1) that as a probationary teacher, Steele could not challenge the school board's decision of nonrenewal, (2) that even if Steele could appeal, his action was barred under the seventy-five day limitations period under the TFDA, and (3) that he had no contract claim because a contract did not exist between the parties. Steele did not challenge the void nonrenewal; but instead, litigated the breach of his contract that had automatically renewed when the district failed to strictly comply with the TFDA. Steele asserted that his complaint was not barred by the seventy-five-day limitation because he was a probationary teacher, not a nonprobationary teacher. Therefore, he was only bound by the five-year statute of limitation for breach of a written contract.

■ Agreeing with Steele's argument, our supreme court stated:

> [B]ecause the attempted nonrenewal did not strictly comply with the terms of the TFDA, the action became void, and on May 1, 1994, Steele's contract was automatically renewed under the terms of his original contract . . . Steele was a contracted probationary teacher for the 1994-1995 school year.
>
> The District alleges that this action is controlled by the TFDA, which does not allow an outside breach-of-contract claim. However, the District's failure to strictly comply with the TFDA's terms rendered the District's actions void, and takes this lawsuit outside the confines of the TFDA. This is not an appeal from the decision for nonrenewal, which would require us to

consider the viability of an appeal by a probationary teacher. Rather, the resulting breach became an original cause of action properly filed in circuit court.

*Id.* at 202, 61 S.W.3d at 806-07.

■ Commensurate with the *Love* and *Steele* decisions, we hold that the strict compliance standards of the TFDA apply to probationary teachers. Appellant's contracts for 1999-2001 required him to have an Arkansas teaching certificate, and he was, in fact, a qualified teacher as defined by the TFDA. The TFDA set out the requirements which the district must meet in order to prevent the automatic renewal of a teacher contract. The Act requires notification by the superintendent of nonrenewal recommendation by May 1 of the contract year. The Act requires the district to evaluate the teacher annually, *see* Ark. Code Ann. § 6-17-1504(a), give the teacher, in writing, problems that could result in nonrenewal of the contract, *see* Ark. Code Ann. § 6-17-1504(c), and assist the teacher in correcting the problems, *see* Ark. Code Ann. § 6-17-1504(c). Here, although the record does support that some assistance was provided to appellant in an attempt to salvage his basketball programs, the district failed to provide written notice of the problems or evaluations as required by the Act. Further, appellant was not evaluated, not advised in writing of problems that could result in nonrenewal of his contract, and not provided with notice of the nonrenewal recommendations until after he was notified by the April 25, 2000, letter signed by the district's superintendent that his coaching duties were eliminated. The failure of the district to strictly comply with any one of these provisions creates by operation of law a renewal of the teaching contract for the upcoming year. *See* Ark. Code Ann. § 6-17-1506 (Repl. 1999).

*Damages*

■ Although the failure of the district to strictly comply with the TFDA rendered the nonrenewal of his contract for the 2000-01 school year void, appellant must establish his damages for breach of contract with the same specificity as any other common law contract claim. In *Marshall Sch. Dist. v. Hill*, 56 Ark. App. 134,

140, 939 S.W.2d 319, 321-22 (1997) (citing *Western Grove Sch. Dist. v. Strain*, 288 Ark. 507, 707 S.W.2d 306 (1986)), this court stated:

> Despite the argument being raised by Mr. Hill, we find that the disposition of this issue is dictated by *Western Grove Sch. Dist. v. Strain*, 288 Ark. 507, 707 S.W.2d 306 (1986). In that case, a teacher prevailed on a contract dispute under the Arkansas Teacher Fair Dismissal Act and the supreme court discussed possible mitigation of damages through other employment. The court held, in such cases, the aggrieved party must use reasonable care, effort, and expenditure to mitigate damages. The court also held that the proper measure of damages is loss sustained by the teacher, less any mitigation earnings that may be realized through subsequent employment.

*Marshall, supra.*

Appellant's 1999-2000 contract provided that he would receive a salary of $28,250 as the junior high in-school suspension teacher, the junior high head basketball coach, the assistant junior high football coach, and the assistant senior high basketball coach. The district voted to discontinue appellant's coaching duties for the following year and offered him a new contract as a classroom teacher for $23,400, which was $4,850 less than the previous year. Appellant refused to sign the offered contract and instead, indorsed his previous one.

Superintendent Gathen testified that during the summer of 2000, he was authorized by the school board to offer appellant the positions of assistant junior high football coach and assistant baseball coach along with the compensation as a classroom teacher. Appellant refused this offer. According to Gathen, had appellant accepted this offer, he would have received $900 as assistant baseball coach and $3,300 as assistant junior high football coach. Instead, appellant chose only to receive the salary of a classroom teacher. The difference in what appellant would have earned had he accepted the coaching assignments and what he earned during 1999-2000 school year was $650. Appellant's refusal to mitigate his damages limits his damages to $650, the dif-

ference in what he earned under the 1999–2000 contract and what he could have earned had he accepted the offer of appellee.[1]

█ Further, appellant asserts that he is entitled to attorney's fees pursuant to Arkansas Code Annotated section 16-22-308 (Repl. 1999). Section 16-22-308 states that "in any civil action to recover . . . for breach of contract . . . the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." Appellant's action against the school district was for breach of contract, and pursuant to the above statute, the circuit court was authorized to award attorney's fees not subject to a specified limit. We agree with appellant that he is entitled to reasonable attorney's fees and remand for a determination by the circuit court of reasonable attorney's fees. Thus, we reverse this point and remand for entry of judgment consistent with this opinion.

### Claim for 2001-02 contract

For his second point, appellant argues that on May 1, 2000, his 1999–2000 contract was automatically renewed and therefore, he was a "teacher" as defined by the Act during the 2000-01 school year regardless of the duties relegated to him by the superintendent. Further, he argues that when the school district voted to nonrenew his contract for the 2001-02 school year on May 8, 2001, without allowing appellant to have a hearing, the district violated the TFDA and its own personnel policies for the 2001-02 school year.

In order to obtain the benefits under the TFDA, the employee must meet the definition of a teacher set out in Arkansas Code Annotated section 6-17-1502(a)(1). A teacher is defined "as any person . . . employed in an Arkansas public school district who is required to hold a teaching certificate from the Department of Education as a condition to employment." *See* Ark. Code Ann. § 6-17-1502(a)(1).

---

[1] Although the court found that appellant failed to accept employment with Altheimer Unified School District, we note that the offer for that employment occurred during the 2000-01 school year for the following school year according to his testimony. Appellant's argument of entitlement to a teacher contract for the school year 2001-02 is addressed in the latter part of this opinion. Because appellant was not a teacher during this time period, it is unnecessary to determine whether an actual offer was made.

For the school year of 2000-01, appellant worked as the in-school suspension monitor. It is undisputed that the position did not require appellant or any other person occupying the position to hold a teaching certificate from the Department of Education. Appellant refused to sign his teacher's contract, which required him to have a teacher's certificate, and during the summer, he refused to accept additional coaching duties which also required him to have a teacher's certificate. Instead, he indorsed his previous contract and opted to work as the in-school suspension monitor, a non-certified position.

On May 1, 2001, Gathen hand-delivered a letter to appellant notifying him of his recommended nonrenewal based on the lack of need for the 2001-02 school year as the in-school suspension monitor. On May 8, 2001, the district accepted the nonrenewal recommendation. Appellant testified that he did not request a hearing before the board after receiving that letter because the board had already decided not to renew his contract. In *Western Grove Sch. Dist. v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994), our supreme court stated that a teacher or a coach is not required to ask for a school board hearing after the board has already taken action on his contract.

Appellant, although receiving the pay of a teacher, failed to meet the requirements set forth in Arkansas Code Annotated section 6-17-1502(1), and therefore, he is not a teacher for the purposes of the Act. Since appellant's only remedy was to pursue a common-law action on the breach-of-contract claim it was necessary that he serve as a teacher as defined by the TFDA. Thus, appellant lost the benefits provided by the TFDA and cannot pursue an action under the TFDA. Having held that appellant was not a teacher for the purpose of the Act for the school year 2001-02, we decline to address the issue of mitigation for that school year.

The procedures used by the district did not comply with the TFDA. However, appellant was not a teacher for the school year 2000-01 and therefore, the failure of the district to comply with the requirements of the Act does not enure to the appellant's benefit. Therefore, we do not find that the decision of the trial court was erroneous and affirm.

Reversed in part; affirmed in part.

STROUD, CJ., BIRD, and GRIFFEN, JJ., agree.

ROAF, J., concurs.

CRABTREE, J., dissents.

ANDREE LAYTON ROAF, Judge, concurring. I concur in the majority's analysis and conclusion as to Garrett Sheets's entitlement to back pay for the 2000-2001 school year. However, I would affirm the trial court's decision that Sheets is not entitled to any back pay for the 2001-2002 school year on a different basis. Because Sheets has not challenged the trial court's finding that he failed to mitigate his damages in both the 2000-2001 and 2001-2002 contract years, I would not address the issues Sheets raises on appeal with respect to 2001-2002.

In its order, the trial court found that: 1) Sheets was not entitled to the protections of the Arkansas Teacher Fair Dismissal Act (ATFDA), Ark. Code Ann. § 6-17-1501 *et seq.* (Repl. 1999), because he was a probationary teacher in 1990-2000; 2) Sheets was not a teacher, probationary or otherwise, during the 2000-2001 school year because his position as an in-school suspension monitor did not require certification as a condition of employment; 3) even if Sheets was entitled to judgment on his alternative claim for breach of contract, he failed to mitigate his damages both in 2000-2001 while still employed by the appellee Dollarway School District and in 2001-2002 after his termination by failing to accept an offer of employment from the Altheimer School District. The trial court did not specify the dollar amounts at issue in either year in its finding of failure to mitigate.

Sheets makes no argument challenging the trial court's finding that he is entitled to no damages based on the failure to mitigate. With regard to the 2000-2001 school year, Sheets argues that he is entitled to all of the extra coaching stipends, employer matching and retirement contributions, interest, costs, and attorneys fees, and cites to Ark. Code Ann. §§ 6-17-1503 and 1506, Ark. Code Ann. § 16-22-208, and *Love v. Smackover School District*, 329 Ark. 4, 946 S.W.2d 676 (1997). Sheets simply does not

acknowledge or address in any way the duty to mitigate in his arguments or request for relief from this court.

With regard to the 2001-2002 school year, for which the alleged offer of employment with the Altheimer School District was made to Sheets, he argues that he was a "teacher" during 2000-2001, and that he is entitled to a full teacher's salary for this subsequent year because of non-renewal of his position as in-school suspension monitor. However, there was testimony that Sheets would have made a higher salary with the Altheimer School District than with the appellee district. Again, Sheets does not address the trial court's finding that he failed to mitigate his damages in this contract year.

In sum, Sheets has raised no direct challenge to the trial court's findings that he failed to mitigate his damages in either of these two years. The majority has concluded that Sheets is not required to challenge this ruling to obtain a reversal on the merits of his other arguments with respect to the first year, because Dollarway did not offer him the full amount of the coaching stipends that he had received in the previous year, and the trial court's ruling on failure to mitigate would thus only apply to the actual sum offered to Sheets and which was refused by him. I agree with this conclusion. However, it is a familiar rule of practice that an appellate court does not reverse on a ground not argued by the appellant, even when the record is subject to de novo review on appeal. *McGuire v. Smith*, 58 Ark. App. 68, 946 S.W.2d 717 (1997). Arguments not made on appeal are deemed waived. *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000); *Hazen v. City of Booneville*, 260 Ark. 871, 545 S.W.2d 614 (1977).

Consequently, we cannot reverse the finding that Sheets is entitled to no damages at all for the 2001-2002 school year by addressing and reversing on the points he has selectively chosen to raise. We should therefore affirm the trial court's finding on this contract year without consideration of the other issues Sheets advances on appeal, because Sheets has failed to challenge a ruling which is in effect dispositive of his claim for damages for 2001-2002.

TERRY CRABTREE, Judge, dissenting. In this decision, the majority refuses to abide by precedent established by

the supreme court, and in the process, the majority reverses on an issue that was not raised by the appellant and reverses on an issue that should not be addressed by this court. To make matters worse, the majority makes findings of fact on appeal. I dissent.

In separate years, the school district voted not to renew appellant's existing employment contract. The essence of appellant's complaint was that on both occasions the school district had breached his contract by failing to strictly comply with the requirements of the Teacher Fair Dismissal Act, and he claimed that he was entitled to damages in the form of wages he lost as a consequence of the district's breach. In denying appellant's claim, the trial court made two, equally dispositive findings. The court ruled: (1) that the Act did not apply to appellant's contract because he was a probationary teacher, and thus the district could not be held to the standard of strict compliance; and (2) that, even if the Act did apply, appellant was not entitled to *any* damages because of his failure to mitigate.

In any given case, it is the task of the appealing party to present an argument that warrants reversal of the trial court's decision. Likewise, it is a longstanding principle that on appeal the appellate court reviews only the errors that are assigned. *Rosser v. Columbia Mutual Ins. Co.*, 55 Ark. App. 77, 928 S.W.2d 813 (1996). In this case, the appellant has offered two issues on appeal for our consideration. First, appellant states, "THE DOLLARWAY SCHOOL DISTRICT FAILED TO STRICTLY COMPLY WITH THE TEACHER FAIR DISMISSAL ACT AND ITS OWN PERSONNEL POLICIES THUS BREACHING ITS 1999-2000 AND 2000-2001 WRITTEN TEACHER'S CONTRACTS WITH SHEETS." As his second point, appellant states, "SHEET'S 1999-2000 CONTRACT AUTOMATICALLY RENEWED ON MAY 1, 2000, THUS HE WAS A 'TEACHER' AS DEFINED BY THE TEACHER FAIR DISMISSAL ACT DURING THE 2000-2001 SCHOOL YEAR REGARDLESS OF THE DUTIES TO WHICH THE SUPERINTENDENT RELEGATED HIM." Tucked within the first issue, one can discern an argument that can be read as a challenge to the trial court's ruling that the Act does not apply to probationary teachers. However, appellant makes no argument whatsoever contesting the trial court's alternative ruling that

appellant had suffered no damages as a result of any alleged breach. Not one word is devoted to an argument that the trial court erred either in its application of the law of mitigation or that the trial court's calculations were somehow in error. Indeed, the word "mitigate" is not to be found in the argument section of appellant's brief.

Appellant's total failure to challenge the trial court's ruling with respect to damages is fatal to this appeal. The supreme court has held that, where a trial court makes independent, alternative rulings that are each dispositive of an appellant's claim, and where the appellant attacks only one of those rulings on appeal, the case will be summarily affirmed without addressing either ruling, even if the challenged ruling has merit. *Pugh v. State* 351 Ark. 5, 89 S.W.3d 909 (2002); *Pearrow v. Feagin*, 300 Ark. App. 274, 778 S.W.2d 941 (1989). We, ourselves, have applied the supreme court's reasoning in *Camp v. State*, 66 Ark. App. 134, 991 S.W.2d 611 (1999). Thus, following the law, appellant's failure to challenge the trial court's ruling on damages means that this case must be affirmed in every respect without discussing the merits of either of the trial court's rulings. To put it simply, the trial court's ruling that appellant was not damaged by any alleged breach cannot be reversed because appellant does not claim that this ruling was in error. And, because appellant has not challenged the trial court's ruling on damages, we need not address, and certainly cannot reverse, the trial court's decision that the Act does not apply. Nevertheless, the majority disregards the settled law and reverses both of the trial court's rulings. This court followed the law in *Camp v. State, supra*. That we follow the law one day and ignore it another day will subject this court to the well-deserved criticism that this court is arbitrary in its decision making.

The majority also falls into error by finding as a matter of fact that the district breached appellant's contract. The trial court made no findings of fact as to whether or not the district breached appellant's contract. It was not necessary for the court to make those findings in light of its determination that the Act did not apply. The evidence presented by the parties in this case was sharply conflicting. Yet, the majority resolves the conflicts in appellant's favor. However, the appellate court cannot act as the fact-finder in cases at law appealed from circuit court. *See Coran*

*Auto Sales v. Harris*, 74 Ark. App. 145, 45 S.W.3d 856 (2001). Thus, if it were necessary to reverse this case, it would also be necessary to remand for the trial court to determine if the district breached appellant's contract.