## EMPIRE LIFE & HOSPITAL INSURANCE CO. *v.* ARMOREL PLANTING CO., INC.

5-5066                                                           449 S. W. 2d 200

### Opinion delivered January 19, 1970

*Oscar Fendler*, for appellant.

*Graham Sudbury*, for appellee.

GEORGE ROSE SMITH, Justice. In 1964 the appellee, Armorel Planting Company, employed Mexican laborers, usually called braceros, who were brought from Mexico to Arkansas for temporary agricultural labor that was to continue from August 12 to October 8, 1964. In the course of that employment one of the laborers,

Alfredo Martinez Duran, suffered a back injury which resulted in medical expenses totaling $2,139.40.

Duran, pursuant to the controlling treaty between the United States and Mexican governments, obtained an administrative award, called a Joint Determination, by which Duran recovered 90% of his loss from his employer, Armorel. Upon Armorel's failure to pay the award Duran brought this action against Armorel and its insurer, the appellant Empire. Eventually Duran obtained a summary judgment against Armorel. Armorel paid that judgment and in turn obtained a summary judgment against Empire, plus the statutory 12% penalty and attorney's fee. This appeal is from the latter judgment.

In the trial court Empire contended that whatever injuries Duran may have suffered did not occur while he was actually at work for Armorel and were therefore not occupational injuries within the coverage of Empire's policy of insurance. To prove that contention Empire filed a number of interrogatories directed to Duran and designed to discover the facts surrounding his injuries. The trial court postponed the answering of the interrogatories until it had first decided whether the administrative Joint Determination was binding upon Armorel and Empire—a question that was submitted to the trial court by agreement of all three parties. The court found that the Joint Determination *was* binding upon all concerned and upon that basis dispensed with the interrogatories and entered the two summary judgments.

On appeal Empire makes essentially the same argument that it made below; that is, that the interrogatories should have been answered, that Armorel should have taken an administrative appeal from the Joint Determination, and that Armorel should have taken an appeal to this court from the first summary judgment. We think that the binding effect of the Joint Determina-

tion rebuts all three contentions.

Empire's policy, which is entitled "Migratory Worker's Group Life and Blanket Accident and Sickness Policy," was admittedly issued to comply with Armorel's duty to provide, in accordance with the treaty between the United States and Mexico, what is really workmen's compensation insurance for the Mexican workers. Under the treaty a standard form of work contract must be used. That contract requires the employer to provide for the braceros the same guarantees with respect to medical care and compensation for personal injuries and disease "as may be provided in like cases for domestic agricultural workers under the applicable State law." The contract goes on to require specified scheduled and unscheduled coverages in states which, like Arkansas, do not require workmen's compensation insurance for agricultural farm labor. Ark. Stat. Ann. § 81-1302 (c, 1) (Repl. 1960).

A treaty, when duly made under the federal Government's treaty-making power, has the force of law. *Missouri* v. *Holland,* 252 U. S. 416 (1920). It is familiar law that when a bond is required by statute, the bond will be construed as if the terms of the statute had been written into the contract. *New Amsterdam Cas. Co.* v. *Detroit Fid. & Sur. Co.,* 187 Ark. 97, 58 S. W. 2d 418 (1933). In like manner the terms of the Americo-Mexican treaty must be read into Empire's group insurance policy. In that view the policy is unquestionably one of workmen's compensation insurance and must be so treated.

Article 30 of the treaty provides that controversies between employers and employees will be decided, after notice to both sides, by a Joint Determination made by the Mexican consul and a representative of the Secretary of Labor. The treaty goes on to declare: "The employer . . . and the Mexican worker shall be bound by any final determination made pursuant to this Arti-

cle.'' There is a provision for an administrative appeal, which was not availed of by Armorel.

Empire insists that even though the Joint Determination may have been binding upon Armorel, it was not binding upon Empire. That contention disregards the essential unity that must exist between an employer and its workmen's compensation insurance carrier. The point is clearly stated by Larson, who has this to say:

> Under most compensation acts, either by express provision or by court interpretation, the law has undertaken to compel a certain minimum coverage in insurance contracts, regardless of any narrower agreement between insurer and employer. This is one more illustration of the semi-public character of compensation insurance, for if a compensation policy is written at all, the insurer will frequently find that the scope of his liability to employees is taken completely out of the hands of the parties to the insurance contract and dictated by the law of the state. There are obvious reasons for this kind of intervention by the state. One is that insurers, if allowed to select some risks and not others, would naturally pick the best risks and exclude the worst. The principal reason, however, is probably the convenience of being able to assume that, so far as the employee is concerned, the liability of the insurer is completely co-extensive with that of the employer, so that one proceeding can settle the liability of both. Otherwise, the employee might frequently have two cases to litigate—the first to establish the employer's substantive liability, and the second to show that the insurer's policy covered that liability. [Larson, Workmen's Compensation, § 93.10 (1968).]

Larson's reasoning applies with especial force in the case at bar. The real beneficiaries of Empire's policy were the braceros. As litigants they could hardly

have been subject to a greater disadvantage than the one they faced: the predicament of being untutored aliens temporarily in a country whose laws—indeed, whose language—they did not understand. In those circumstances the treaty quite properly provided a quick administrative procedure for the redress of their grievances. As a matter of hard fact, if Duran had been compelled to litigate first in an administrative proceeding with Armorel and then in a judicial proceeding with Empire, the insurance that was designed for Duran's protection would actually have been almost useless to him.

Under the principles governing workmen's compensation cases, Armorel and Empire were inseparably united in the case. In fact, Empire was actually the real party in interest. It certainly could have taken the administrative appeal from the Joint Determination, just as it could have taken the appeal to this court from the summary judgment that was ostensibly against Armorel alone. Hence the treaty provision that the Joint Determination was binding upon the employer meant also that it was binding upon the employer's insurance carrier. Any other holding would be grossly unfair to the braceros.

What we have said answers the principal questions raised on appeal by Empire. Secondarily, Empire argues that it is not subject to the penalty-and-attorney's-fee provisions of the Insurance Code, because the precise policy involved in this case does not fall within the types of coverage listed in the statute. Ark. Stat. Ann. § 66-3238 (Repl. 1966). That section, however, refers to casualty insurance, which is defined elsewhere in the Code as including workmen's compensation insurance. Section 66-2405 (1) (c). Of course the penalty section of the Code does not ordinarily apply to workmen's compensation cases, but that is only because the compensation statute has its own provision for an attorney's fee for the successful claimant. Ark. Stat. Ann. § 81-

1332. When, as here, that section of the compensation law is not applicable, we think it plain that the definitions in the Code are controlling. See our opinion on rehearing in *Liverpool & London & Globe Ins. Co.* v. *Jones*, 207 Ark. 237, 180 S. W. 2d 519 (1944). The appellee is allowed an additional fee of $750 for the services of its attorney in this court.

Affirmed.