PAUL D. PEEVY *v.* DONALD BELL

73-161                      501 S.W. 2d 767

Opinion delivered December 10, 1973

*Davis, Reed & Douglas,* P.A., for appellant.

*Pearson & Woodruff,* for appellee.

GEORGE ROSE SMITH, Justice. The appellant, in a single point for reversal, contends that the trial judge erred in admitting into evidence certain oral testimony in violation of the parol evidence rule.

In 1971 the two parties entered into a written contract by which Peevy sold to Bell, for $5,000, "the Tandy Homes Franchise" for Springdale and the surrounding area. Some five months later Bell brought this action for breach of contract. Bell asserts that under the agreement Peevy was to assign to Bell three existing contracts for the construction of Tandy homes, upon which (according to Peevy's representations) Bell would make a profit of about $2,500 each. Bell alleges a breach of contract, in that he did not receive the three contracts. The case was submitted to a jury, which awarded Bell $3,500 damages.

Opposing counsel are not really in disagreement about the law. The parol evidence rule excludes oral testimony that would contradict or vary the terms of

a written contract, but the rule does not preclude an oral explanation of an ambiguity in the agreement. *Kerby* v. *Feild,* 183 Ark. 714, 38 S.W. 2d 308 (1931). The question here is whether the parties' written contract is so ambiguous as to be open to explanation under the rule.

We have no doubt that it is. The effective language in the agreement simply recites that Peevy sells to Bell "the Tandy Homes Franchise" in the Springdale area. There is not one additional syllable in the instrument explaining either what a Tandy home is or what the franchise consists of. It was therefore necessary for the litigants to explain to the jury (without objection) that Tandy Homes are prefabricated or pre-cut structures built with materials that are sold exclusively by a Tulsa, Oklahoma, company. It was also necessary for the jury to be told that the "franchise" vests in its holder the sole right to purchase Tandy components and erect Tandy homes in the franchised area.

According to the testimony, the Tandy franchise carried with it the three existing contracts held by Peevy. Bell, the purchaser, testified that Peevy said "the franchise consisted of [the] sole right to purchase from Tandy Homes for the area and to use their advertising, and it also included all existing contracts which he had, to build Tandy Homes, and since I would be franchise dealer, there is no way anyone else could build those homes."

Peevy's testimony is actually to the same effect, as will be seen from this excerpt from his direct examination:

Q. Did you make any agreement to let Mr. Bell have these contracts?

A. Yes, I told Mr. Bell he could have them, because I couldn't use them.

Q. Would you explain that?

A. Well, they were no earthly good to me, really, if I couldn't buy the material from Southern Mills, which is like I say, a subsidiary of Tandy. . . .

Later in his direct examination Peevy said, in response to a leading question, that he did not offer the three contracts as an inducement to the sale. "I only sold the franchise to him. I didn't sell him any contracts."

In substance Peevy contends that the parol evidence rule allows the parties to show what a Tandy home is and to show that the holder of the franchise has the exclusive right to buy Tandy materials, but the rule does not allow oral proof of the additional and related fact that the transfer of the franchise carries with it outstanding contracts that were concededly of no further value to the transferor. The trial judge was right in rejecting that contention. In view of the testimony the meaning of the contract was a jury question. *Triska* v. *Savage,* 219 Ark. 80, 239 S.W. 2d 1018 (1951).

Affirmed.