FARM BUREAU MUTUAL INSURANCE COMPANY
OF ARKANSAS, et al. *v.* Eddie WRIGHT

84-203                                    686 S.W.2d 778

Supreme Court of Arkansas
Opinion delivered March 18, 1985

*Barrett, Wheatley, Smith & Deacon,* for appellant, Farm Bureau Mutual Ins. Co.

*Friday, Eldredge & Clark,* by: *Michael G. Smith,* for appellant Continental Grain Co.

*Steve Clark,* Att'y Gen., by: *Robert R. Ross,* Deputy Att'y Gen., as amicus curiae.

*Rice L. VanAusdall,* for appellee.

DARRELL HICKMAN, Justice. The primary question presented in this case is whether, since the passage of Act 401 of 1981, a farmer who orally sells his grain to a licensed grain warehouseman, who subsequently goes bankrupt, can void the sale and recover the unpaid purchase price from the company that purchased the grain from the warehouseman. The trial court held that the farmer, appellee Wright, is entitled to recover. We disagree.

We believe the purpose of Act 401 is to protect farmers who have stored their grain in warehouses, not those who have made an outright sale of their grain to a warehouseman. Here there was a sale. Act 401 was passed in response to a farm market crisis created by storage elevators going bankrupt and placing farmers, who had stored their grain, at odds with banks, lienholders and creditors over the ownership of the grain. Wayne Cryts, a Missouri farmer, became

the focus of national attention in the James Brothers case[1] when he removed his grain from a bankrupt elevator in violation of bankruptcy court orders. Shortly after the Cryts incident, Act 401 was passed. The history of the act is set out in detail in Note, Act 401 of the *Public Grain Warehouse Law: An Exception to the U.C.C. Concept of Voidable Title,* 37 Ark. L. Rev. 293 (1984). In commenting on the purpose of Act 401, the author said.

> While there has been much discussion in the wake of the James Brothers case as to needed changes in laws governing grain warehouses, Arkansas is the only state which has varied from the U.C.C. to allow a grain depositor to recover against a warehouse grain buyer in the ordinary course of business. Since unauthorized sales 'are void and convey no title,' the farmer can sue to recover from the purchaser, assuming that he has not signed the written instrument required by Act 401, and the identity of the purchaser can be determined. This change is significant because failing grain warehouses have been known to sell depositors' grain to avoid bankruptcy, although such action usually postpones bankruptcy only briefly.

In this case Eddie Wright sold his soybeans to Harrisburg Elevators, Inc., in February, 1983. It was a "spot sale" at his farm for a quoted price. Payment was to be made March 1. It is undisputed that Wright was selling the soybeans, not storing or depositing them with the Harrisburg grain elevator. The beans were taken by Harrisburg to their elevator merely to weigh them and then carried to Memphis and sold there to Continental Grain Company, a federally licensed warehouseman. Continental paid Harrisburg, and Harrisburg gave Wright a check for the purchase price, $73,932, which was dishonored. Wright later received a cashier's check for $17,000 and a personal check for $56,832. The personal check was dishonored. Because of its financial trouble, the State Plant Board closed Harrisburg and Harrisburg soon filed for bankruptcy. Before Harrisburg filed, it paid Wright another $12,000. Wright filed suit for

---

[1]*Missouri* v. *United States Bankruptcy Ct.,* 647 F.2d 768 (8th Cir. 1981).

conversion against Continental Grain Company and Farm Bureau Mutual Insurance Company, which was Harrisburg's bonding company, for the balance of the sale price. The trial court held that Continental and Farm Bureau were jointly and severally liable.

First, we discuss Farm Bureau's appeal. Their defense was that their bond applied only to grain stored in Harrisburg's elevators, and we agree. Under the statute licensing bonded grain warehousemen, the bond is to be conditioned upon the warehouseman's delivering all stored grain or paying its value upon surrender of the warehouse receipt. Ark. Stat. Ann. § 77-1315(a) (Repl. 1981). The amount of the bond is to be determined by the capacity of the warehouse. Ark. Stat. Ann. § 77-1316(a) (Repl. 1981). Statutory bonds are to be construed as if the terms of the statute were written into them. *Empire Life & Hospital Ins. Co.* v. *Armorel Planting Co.*, 247 Ark. 994, 449 S.W.2d 200 (1970). We think it clear that the bond is to protect only the holders of warehouse receipts. Since Wright does not fall within that class, he is not entitled to judgment against Farm Bureau. That conclusion also disposes of Wright's cross-appeal, by which he seeks to recover penalty and attorney's fee from Farm Bureau.

It is not so easy to dispose of Continental's appeal. The trial court ruled that under Act 401 the sale by Harrisburg to Continental was void because Wright had not executed a written document conveying title to the soybeans. We find that ruling to be wrong because in our judgment the act only applies to grain which is stored, not sold outright to the warehouseman. The basis of the trial court's decision and the heart of Act 401 is Section 4, which reads:

> 77-1340   Title to grain.
>    Ownership of grain shall not change by reason of an owner delivering grain to a public grain warehouseman, and no public grain warehouseman shall sell or encumber any grain within his possession unless the owner of the grain has by written document transferred title of the grain to the warehouseman. Notwithstanding any provision of the Uniform Com-

mercial Code (Act 185 of 1961 [§ 85-1-101 et seq.], as amended) to the contrary, or any other law to the contrary, all sales and encumbrances of grain by public grain warehousemen are void and convey no title unless such sales and encumbrances are supported by a written document executed by the owner specifically conveying title to the public grain warehouseman.

A first reading of this section might lead one to conclude that a farmer could void any transaction with a grain warehouseman. But this section does not say a farmer can void an outright sale he makes to a warehouseman; only a sale made by a warehouseman of grain delivered to him for storage can be voided.

There are several reasons for our conclusion. First, the act does not expressly purport to apply to sales by a farmer to the warehouseman. The sales that the act voids are sales of grain *delivered* to a warehouseman and sales of grain within the warehouseman's *possession*. This was the conclusion of the writer of the article noted before who stated: "the farmer who has sold his grain would be estopped from asserting his rights under Ark. Stat. Ann. § 77-1340." See Note, *supra,* 37 Ark. L. Rev. 293, 304. It is usual for a warehouseman to act both as a warehouseman who stores grain and as a dealer in grain. These are two distinct roles. Act 401 regulates warehousemen only when they are acting as warehousemen. Arkansas has no statutory regulation of grain dealers.[2] Section 3 of Act 401 recognizes this dual role when it refers to "a warehouseman who is also in the business of buying and selling such goods. . . ."

We are also especially persuaded by the emergency clause which reveals the true purpose of the act:

It is hereby found and determined by the General Assembly that Arkansas grain producers are experiencing severe losses due to their *stored grain* in public warehouses being sold or encumbered by the public

---

[2] Some states do have such regulations. See e.g., Ill. Ann. Stat. § 114 Par. 701 et seq. (Supp. 1984); Mo. Stat. 276-401 *et seq.* (Supp. 1985); Wyo. Stat. § 11-11-101 *et seq.* (1983).

grain warehousemen without their authorization, and that this Act is immediately necessary to clarify the law and grant protection to Arkansas farmers. (Italics supplied.)

It is a rule of statutory construction that the emergency clause of an act can be used in determining the intent of the legislature. *Missouri Pacific Railroad Co.* v. *Kincannon,* 203 Ark. 76, 156 S.W.2d 70 (1941). This clause is consistent with the title of the act which reads:

An ACT to Provide That Ownership of Grain Shall Not Change by Reason of *Delivery* Thereof to Public Warehousemen and Title to Grain in the Possession of Public Grain Warehousemen Does not Pass to Such Warehousemen Unless the Owner of the Grain Has by Written Document Signed by the Owner of the Grain Transferred Title to the Warehousemen; and for Other Purposes (Italics supplied).

Furthermore, the Arkansas State Plant Board, which is the agency charged with admninistering Act 401, interprets the act to apply only to grain stored, not sold. The trial court ignored evidence of this interpretation and only allowed a proffer of the testimony. It was not only admissible, it was relevant because an administrative interpretation is to be regarded as highly persuasive. *Bramley School Dist. No. 35* v. *Kight,* 206 Ark. 87, 173 S.W.2d 125 (1943).

The act specifically amends by reference the Uniform Commercial Code provision which allows buyers in the ordinary course of business to take free of any claim under a warehouse receipt. Ark. Stat. Ann. § 85-7-205 (Supp. 1983). Section 3 of Act 401 amends that code provision so that soybeans and other specified grains are excepted; no longer is title voidable — it is void unless a farmer signs a document authorizing the sale or encumbrance of his grain. This was a radical step by the General Assembly pertaining to warehouse receipts but to conclude that the intent was to make it possible to void all sales as well would be to rewrite the act. There was no warehouse receipt in this case.

For all these reasons we conclude that the trial court was wrong in applying Act 401 in this case. We need not address the other questions raised by Continental. Neither party vigorously contended that Continental was not an innocent purchaser; i.e., that Continental was aware that Harrisburg did not have good title to the grain. There was only testimony by one of Continental's managers that he had heard rumors that Harrisburg was having financial trouble and that they heard the same about many elevators at the time.

In order to defeat the sale, Wright would have had to prove that Continental was not a good faith purchaser for value. Ark. Stat. Ann. § 85-2-403 (Repl. 1981). Since that was not proven, Wright cannot recover from Continental.

Reversed.

GEORGE ROSE SMITH and DUDLEY, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. The statute in question was undoubtedly passed to provide farmers with additional protection against improvident or dishonest grain warehousemen, but the majority's narrow interpretation of the act has deprived Wright and other farmers of the protection that was intended. We must assume that the legislature was familiar with the evil it was trying to correct. When I look at the facts which gave rise to the enactment of the statute, facts which the majority have quite properly omitted in stating their views, I am convinced that the act had a remedial purpose and should be liberally construed to achieve that purpose.

According to the proof, 98% of the public grain warehousemen in Arkansas are primarily engaged in buying and selling grain, not in storing it. Harrisburg Elevators, for example, bought 140,000 bushels of soybeans in January and February, 1983, the month pertinent here, but it had only about 7,000 bushels in storage. The average farmer does not have the tractor-trailers and equipment necessary for him to sell and deliver his own crop. Consequently he is compelled, as Wright was compelled, to sell his crop to a

grain warehouseman. In that situation the application of the statute is clear.:

> Ownership of grain shall not change by reason of an owner delivering grain to a public grain warehouseman, and no public grain warehouseman shall sell or encumber any grain within his possession unless the owner of the grain has by written document transferred title of the grain to the warehouseman.

The act declares that title shall not pass by the farmer's "delivering" his grain to a public warehouseman, but the majority hold that the legislators really meant to say "delivering for storage." Why? Most grain is not delivered for storage. The farmer who does deliver his crop for storage, a comparatively rare transaction, has scant need for the new statute. He receives a warehouse receipt for his grain, and if the warehouseman cannot honor the receipt the farmer is protected by the warehouseman's surety bond, required by law. Futhermore, the farmer who merely stores his grain still owns it. There is not the slightest reason for him to transfer title to the warehouseman by written document, as the same sentence in the act contemplates. To the contrary, he does *not* intend to pass title when he stores his crop. Yet, as the majority interpret the statue, he must make a written transfer of title to obtain the protection intended by the act. All that Harrisburg had to do in buying Wright's crop was to have him sign any piece of paper transferring title. It was Harrisburg, knowledgeable in the business, who was at fault, not Wright. But it is Wright who suffers the consequences.

I would construe the statute to give effect to the purpose for which it was passed. I agree that the judgment should be reversed as to the bonding company, but I would affirm on the principal issue.

DUDLEY, J., joins in this dissent.