COOPER, INC. *v.* FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS, et al.
and
Vernon BLOCK *v.* FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS, et al.

85-248                                          711 S.W.2d 155

Supreme Court of Arkansas
Opinion delivered June 9, 1986

*Charles R. Easterling*, for appellants.

*Barrett, Wheatley, Smith & Deacon*, for appellee Farm Bureau Mutual Insurance Company of Arkansas, Inc.

*Friday, Eldredge & Clark*, by: *Michael G. Smith*, for appellees Continental Grain Company, Pillsbury Company, Cargill, Inc. and Archer-Daniels-Midland Company.

STEELE HAYS, Justice. Appellants Vernon Block and Cooper, Inc. are farmers. Appellee Harrisburg Elevators, Inc. is a licensed, public grain warehouseman. During October and November, 1982, Cooper delivered a total of 24,648 bushels of soybeans to Harrisburg and Block delivered 2,179 bushels. After the beans were stored and commingled Cooper and Block entered into contracts with Harrisburg which gave the "sellers" the right to conclude the sale at some future date of their choosing by receiving a final price based on the market value of the soybeans as of that day. After the contracts were signed Cooper and Block received an advance payment of $4.50 per bushel.

The soybeans were eventually sold by Harrisburg to four grain companies, appellees Continental Grain Company, The Pillsbury Company, Cargill, Inc. and Archer-Daniels-Midland Company. In March, 1983 Harrisburg's license was suspended following an audit by the Arkansas State Plant Board and the

warehouse filed in bankruptcy.

In separate actions, Cooper and Block brought suit against Harrisburg Elevators, Arkansas Farm Bureau Insurance Company, surety on Harrisburg's bond, and against the four grain companies. The complaints alleged that because of deficiencies in the written contract, title to the soybeans remained in Cooper and Block until the final price was determined and since that had not occurred the sales by Harrisburg to the grain companies were conversions. Cooper and Block contend the soybeans had a market price of $6.63 per bushel and Harrisburg's inability to perform its contract has damaged them accordingly.

The defendants filed motions for summary judgment based on the pleadings, exhibits, affidavits and responses to interrogatories, contending there were no genuine issues of material fact. The defendant grain companies also pled estoppel and alleged any damage Cooper and Block may have sustained was the proximate result of their own negligence in delivering their soybeans to Harrisburg under an appearance of title. The trial court sustained the motions for summary judgment upon a finding that by entering into the contracts and receiving a $4.50 per bushel advance, Cooper and Block conveyed title to their soybeans and, hence, no action in conversion exists as a matter of law. Summary judgment on behalf of Farm Bureau was granted on the admitted fact that Cooper and Block held no warehouse receipts, a necessary condition under Farm Bureau's bond. Cooper and Block have appealed and the two cases were consolidated for purposes of appeal. We affirm as to Farm Bureau and reverse as to the remaining appellees.

The issue of liability under the bond of Farm Bureau can be quickly disposed of. The trial judge held correctly that the bond was intended only for the protection of holders of warehouse receipts. Ark. Stat. Ann. § 77-1315(a) (Repl. 1981); *Farm Bureau Mutual Ins. Co.* v. *Wright*, 285 Ark. 228, 686 S.W.2d 778 (1985). Since Cooper and Block admittedly hold only unpriced scale tickets and not warehouse receipts, there could be no recovery under the bond and, hence, no cause of action against Farm Bureau. Appellants' argument that Act 264 of 1983 amends Section 2 of The Public Grain Warehouse Law (Ark. Stat. Ann. § 7.7-1301 through 1342), by including an "unpriced

scale ticket" within the definition of a warehouse receipt can be answered by noting that these transactions occurred in October and November 1982, well before the February 25, 1983 effective date of Act 264. Appellants do not contend the amendment should be given retroactive effect. Accordingly, the summary judgment and order with respect to Farm Bureau Mutual Insurance Company of Arkansas, Inc., is affirmed.

We begin our consideration of the propriety of granting summary judgment to the remaining defendants, the appellees, by noting that summary judgment is an extraordinary remedy. *Windham, Inc.* v. *Reynolds Insurance Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983); *Talley* v. *MFA Mutual Insurance Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981). It is, by definition, difficult to sustain. "Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable men might differ." *Clemens* v. *First National Bank*, 286 Ark. 290, 692 S.W.2d 222 (1985).

Both sides cite us to Act 401 of 1981 (Ark. Stat. Ann. § 77-1340):

> Ownership of grain shall not change by reason of an owner delivering grain to a public grain warehouseman, and no public grain warehouseman shall sell or encumber any grain within his possession unless the owner of the grain has by written document transferred title of the grain to the warehouseman. Notwithstanding any provision of the Uniform Commercial Code (Act 185 of 1961 (§ 85-1-101 et seq.), as amended) to the contrary, or any other law to the contrary, all sales and encumbrances of grain by public grain warehousemen are void and convey no title unless such sales and encumbrances are supported by a written document executed by the owner *specifically conveying title to the grain to the public grain warehouseman.* (Our italics.)

Appellants point out that the contracts signed by Cooper and Block fail to contain a provision specifically conveying title to the soybeans, which the enactment plainly requires. Appellees concede the absence of such language, but urge that the words "We (referring to Harrisburg Elevators) confirm purchase from you

of:", followed by a description of the soybeans, suffices. We disagree. The contract is a printed form bearing the letterhead of Harrisburg Elevators and is entitled "Deferred Price Purchase Contract." It is composed of a single page and includes printed general terms and typed special terms reading as follows:

> Seller understands the grain may or may not be physically stored at buyer's warehouse. Seller must price grain on or before _open_ at buyer's daily price.

Harrisburg is identified as the buyer and Block (or Cooper) as the seller in several places.

In *Farm Bureau Mutual Insurance Company* v. *Wright*, 285 Ark. 228, 686 S.W.2d 778 (1985) we examined this statute and recognized its purpose—to protect farmers who have stored their grain in public warehouses. That case differs from the one before us in that Wright had admittedly made a "spot sale" at his farm to the warehouse, and the issue was whether Act 401 applied to grain that was sold outright and never stored or commingled with other grain. Thus *Wright* has only general relevance to this case.

The case more nearly resembles *Tucker* v. *Durham*, 285 Ark. 264, 686 S.W.2d 402 (1985), where the appellant urged we should not be guided by Act 401 because its only purpose was to limit the warehouseman in selling stored grain to third parties and voiding such sales when title has not been specifically conferred in writing by the producer upon the warehouseman. We said:

> The Warehouse Law, however, makes it clear that unless transfer of title from the producer to the warehouseman has occurred, the grain is to be regarded as stored rather than sold, so the giving and taking of an advance payment does not remove the storer from the bond's protection.

Appellees argue that the words "we confirm purchase from you . . ." constitute sufficient compliance with Act 401, since they tell the owner in common parlance that he is selling his grain. In the context of routine transactions we might agree, but the legislature has seen fit by the enactment of Act 401 to leave nothing to doubt, and has declared that no title shall be transferred unless title is *specifically conveyed* to the warehouseman

by a written document signed by the owner. We think that language must be taken literally, to do less would be to disregard the plain intent and purpose of the statute. Some analogy can be found in the Freedom of Information Act, Ark. Stat. Ann. § 12-2801 et seq., wherein the legislature has declared that all public records are subject to inspection, "[e]xcept as otherwise *specifically* provided by laws now in effect, or laws hereafter specifically enacted to provide otherwise" (our italics). We have held that such imperatives require literal compliance. *Ragland* v. *Yeargin*, 288 Ark. 81, 702 S.W.2d 23 (1986); *Baxter County Newspapers, Inc.* v. *Medical Staff of Baxter General Hospital*, 273 Ark. 511, 622 S.W.2d 495 (1981).

Other factors support this view: appellants offered proof that in October of 1981 the Arkansas State Plant Board notified Harrisburg that its contracts for deferred pricing should include a statement that the farmer understands he is transferring title to the buyer. The Plant Board spelled out the requirements of Act 401 in the following language:

> The undersigned seller of grain indicated on this deferred pricing contract fully understands that he is *transferring title of said grain to the buyer* and is relinquishing all control of the grain to the buyer. The seller further understands that the buyer can sell and move the grain at any time before the seller receives actual payment for the grain. (Our italics.)

Despite this, the contracts between Harrisburg and Cooper and Block, prepared nearly a year later, failed to contain the crucial language. Had Harrisburg followed the Plant Board's directive, there would be little basis for any misunderstanding between the parties.

Too, Cooper and Block tendered affidavits in opposition to the motions for summary judgment, asserting that they were never told they were relinquishing title to the soybeans, but were told by representatives of Harrisburg that when the final price was determined Cooper and Block would be charged $.03 per bushel per month for storage. This arrangement, if true, weighs in favor of the premise that Cooper and Block were still the owners of the soybeans until the final price was determined, for if Harrisburg were the owner, why would Cooper and Block be

answerable for storage? Nor do we think these contracts were so complete and unambiguous in their terms as to withstand parol evidence to determine the intent of the parties. *Peevy* v. *Bell*, 255 Ark. 663, 501 S.W.2d 767 (1973); *Kyser* v. *T. M. Bragg & Sons*, 228 Ark. 578, 309 S.W.2d 198 (1958). These contracts leave a good deal to speculation. There is no stated formula for determining future price, and the special terms, set out above, state merely the "Seller" must price the grain on or before a date referred to only as "open." In short, we think it would be difficult indeed to enforce these contracts without reference to parol evidence. *Jefferson Square, Inc.* v. *Hart Shoes*, 239 Ark. 129, 388 S.W.2d 902 (1965); *Smock* v. *Corpier*, 226 Ark. 701, 292 S.W.2d 260 (1956).

We conclude that since the contracts failed to comply with Act 401, the appellees cannot argue successfully that the title was transferred.

Affirmed as to Farm Bureau Mutual Insurance Company, reversed and remanded as to the remaining appellees for trial on the remaining issues.

Affirmed in part, reversed and remanded in part.

PURTLE, J., not participating.