Jim ALLRED *v.* ARKANSAS DEPARTMENT
of CORRECTION SCHOOL DISTRICT;
David C. McClintion; Morris H. Dreher; Janis Walmsley;
Rev. Hezekiah D. Stewart, Jr.; Bobby L. Roberts;
Mike Gaines; & Larry Norris, as Members of the Department
of Correction School District Board of Directors

95-762                                         912 S.W.2d 4

Supreme Court of Arkansas
Opinion delivered December 18, 1995

*Mitchell, Blackstock & Barnes*, by: *Clayton R. Blackstock* and *Lisa Wilis*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Tim Humphries*, Deputy Att'y Gen., for appellees.

TOM GLAZE, Justice. Appellant Jim Allred had been hired by the appellee Department of Correction School District as a certified teacher for the 1993-1994 school year. In a letter dated April 1, 1994, the district's supervisor of education services, Hurshell Qualls, informed Allred that Qualls intended to recommend to the Board that Allred be placed on "a year's (sic) leave or longer without pay beginning next school year." Qualls referred to Allred's excessive absenteeism and his failure to provide a doctor's statement regarding his illness. Allred received Qualls's letter on April 6. On April 21, Allred provided his principal, Jack Broach, with the required doctor's statement. On April 28, 1994, the Board met and placed Allred on an indefinite leave of absence without pay because of 75.5 days of absenteeism.

On June 13, 1994, Allred filed a petition for writ of mandamus and complaint in circuit court, and amended it on August 22. Alleging denial of his constitutional due process rights and violation of the Teacher Fair Dismissal Act (TFDA), Allred requested a writ of mandamus to compel the Department to renew his teaching contract, and to declare that his contract was automatically renewed under the TFDA and that the Board's action was constitutionally void. Allred requested reinstatement and damages for breach of contract.

The Department filed a motion to dismiss Allred's amended petition and complaint for failure to state a claim upon which relief could be granted. The Department claimed the Department's school district is not a public school district and subject to the requirements of the TFDA, and Allred does not possess a property right in his employment which would afford him due process rights.

By order entered March 23, 1995, the trial court dismissed Allred's complaint pursuant to Ark. R. Civ. P. 12(b)(6). Allred appeals only the trial court's dismissal of his TFDA claim.

■ The Teacher Fair Dismissal Act of 1983, as amended, governs the dismissal of teachers within the state's public school system. Ark. Code Ann. §§ 6-17-1501—1510 (Repl. 1993). The term "teacher" is defined as any person, other than a superintendent or assistant superintendent, employed in an Arkansas "public school district," who is required to hold a state teaching certificate as a condition of employment. § 6-17-1502(a)(1). *See also Love* v. *Smackover Sch. Dist.*, 322 Ark. 1, 907 S.W.2d 136 (1995). Under § 6-17-1506(a), every contract between a teacher and the school board shall be automatically renewed for the next school year unless the teacher is notified of nonrenewal by May 1 of the contract year. Arkansas law requires school districts to strictly comply with the notice provisions of the TFDA. § 6-17-1503.

Here, no dispute exists between the parties that Allred was required to have a state teaching certificate in order to be employed as a teacher with the Department. The question on appeal is whether the Department of Correction school district is part of the state's public school system and subject to the requirements of the TFDA.

The Department's school district was established by Act 279 of 1973, which is codified as amended at Ark. Code Ann. §§ 12-29-301—310 (1987 and Supp. 1993). The district was created to provide elementary, secondary, and vocational and technical education to all persons incarcerated in the Department's facilities who are not high school graduates, irrespective of age. § 12-29-301(b). The Board of Correction acts as the school board for the district. § 12-29-301(c). Section 12-29-303 provides as follows:

> *The schools established under the provisions of this subchapter* and those persons incarcerated who attend the schools *shall be entitled to all of the privileges provided generally to common public schools* and adult education programs administered by the State Board of Education to students who attend them under the laws of the State of Arkansas, provided the privileges do not conflict with the rules, regulations, and policies of the Department of Correction or the laws of the state respecting the establishment and operation of the Department of Correction.

(Emphasis added).

Allred argues that the Department's district is part of the state's public school system, and his dismissal as a teacher with the Department is subject to the TFDA. Allred bases his argument on the following: (1) the General Assembly expressly recognizes the district as a public school district; (2) the General Assembly distinguishes only between public and private school districts; and (3) the district is subject to the standards for accreditation of public schools.

First, Allred cites several statutes and emergency clauses that make reference to the Department's "school district." Specifically, Allred cites § 12-29-301 as quoted above, and the emergency clause to Act 671 of 1989 which amended Act 279 establishing the Department's school district. The emergency clause of Act 671 reads in pertinent part as follows:

> It is hereby found and determined by the General Assembly that confusion has arisen concerning the funding of the *public school program* operated in the Department of Correction; that *it is necessary to clarify that funds*

*generated from various programs within the department may be utilized in support of the public school district within the department*[.]

(Emphasis added). Allred argues the emergency clause clarifies the district's classification as a public school district, and statutory rules of construction allow the use of an act's emergency clause in determining the intent of the legislature. *Farm Bureau Mutual Ins. Co.* v. *Wright*, 285 Ark. 228, 686 S.W.2d 778 (1985).

Further, Allred cites Ark. Code Ann. § 6-13-101 (Repl. 1993) where the General Assembly provided as follows:

(a) There shall be only one (1) kind of school district in this state, and each shall have the same prerogatives, powers, duties, and privileges as herein set forth.

(b) All school districts which may be hereafter created shall be the same kind, with the same prerogatives, powers, duties, and privileges as provided by law.

Allred contends the General Assembly has authorized only the creation of one type of school district and that type is a "public school district."

The Department responds that true public schools are those elementary and secondary schools operated by school districts which receive both federal, state, and local funds for the benefit of children in grades kindergarten through twelve. *See* § 6-13-902(1). The Department contends its school district is an entirely different sort of school. First, the Department notes that children who live within the geographic confines of the Department's school district cannot attend the Department's school because it is limited to those incarcerated within the Department. Further, the Department claims board members of true public school districts are elected; whereas, the correction board members serve as the district's school board and those members are appointed by the Governor, rather than elected. *See* Ark. Code Ann. § 6-13-604 et seq. (Repl. 1993).

Second, Allred argues the only reason the General Assembly used the phrase "public school district" in the TFDA is to

distinguish it from a private school district.[1] Allred cites § 6-18-702(a) which requires all children to be immunized before admission "to a public or private school." Allred also contends that public refers to school districts which receive public funds and the Department's district receives public funds. Allred cites other statutes where the General Assembly addresses "public and private schools." *See* § 6-16-105(b) (a flag shall be displayed at every public and private school).

The Department counters Allred's second argument by stating its district is not required to meet the education standards required by the Quality Education Act of 1983 (QEA), §§ 6-15-201 *et seq.*; and thus, it cannot be a true public school district. Further, the Department points out that its district cannot be dissolved or annexed with another school district or lose public aid if it does not comply with the QEA, as other districts can be sanctioned.

In reply, Allred contends the Department is not completely exempt from the QEA as it claims, and cites § 12-29-304(b) which reads as follows:

> In view of the role, duties, and responsibilities of the Department of Correction as a penal and correctional institution, *the inability of the Department of Correction School District to meet the full requirements* of the rules and regulations of the quality education standards promulgated by the State Board of Education pursuant to §§ 6-15-201— 6-15-212, and other laws and regulations of the state pertaining to quality education standards *shall, in no way, penalize or jeopardize the state grants and aids for public school districts* as authorized in this subchapter.

(Emphasis added). Allred contends the General Assembly recognized the special differences between common public school districts and the Department's district, and argues, if the Department's district is not a public school district, no need existed for the General Assembly to create the special exemption in § 12-29-304(b).

---

[1] We note there is no constitutional or statutory authority for establishment of private school districts.

Third and finally, Allred argues the Department's district is a public school district because it is subject to the same standards for accreditation for public schools as cited above in § 12-29-304(b). Further, Allred points out the Department is like other public school districts, in that it is authorized to provide vocational and high school education for students under 21 years and over 21 years of age. *See* § 6-16-308.

■ In reviewing a trial court's decision on a motion to dismiss, this court treats the facts alleged in the complaint as true and views them in a light most favorable to the plaintiff. *Forehand* v. *First Bank of Ark.*, 315 Ark. 282, 867 S.W.2d 431 (1993). It is improper for the trial court to look beyond the complaint to decide a motion to dismiss. *Id.* All reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be reasonably construed. *Id.* Here, the question is one of law which requires statutory interpretation.

We agree with Allred. As § 6-13-101 provides, there shall be only one kind of school district in this state. That single kind of district is supported by public funds, and hence a public school district is established.

■ While the Department's school district is certainly different from other public school districts, it is clear from reading Ark. Code Ann. §§ 12-29-301—310 (1987 and Supp. 1993), and emergency clauses of associated acts that the General Assembly intended to establish a public school district within the Department of Correction for the benefit of both the free and the incarcerated populations. The emergency clause of Act 279 of 1973 reads in pertinent part as follows:

> The General Assembly finds that there is an immediate need for the institution of basic education for inmates of the Department of Correction, to the end that the said inmates may improve their minds and characters and become less likely to commit further crimes.

Further, public funds support the district — federal funds and state funds from the departments of education and correction. § 12-29-304(a). While the special role, duties, and responsibilities of the Department of Correction are first and foremost those of maintaining a correctional institution, the General Assembly

has created a public school district within the institution for rehabilitative purposes. As other school districts, the Department is authorized to offer both general education and vocational education experiences for its student population. The fact that the Department's students are awarded a GED or receive vocation-technical training does not negate the Department's responsibility to operate under the law as a publicly supported school district.

In line with our review of the controlling statutes above, we hold the Department's district is a public school district as a matter of law. As a public school district, the Department is subject to requirements of the Teacher Fair Dismissal Act. Because Allred was employed with the Department's school district as a teacher and was required to have a state teaching certificate as prerequisite to employment, Allred was a teacher within the meaning of the TFDA. *See Love* v. *Smackover Sch. Dist.*, 322 Ark. 1, 907 S.W.2d 136 (1995). Allred's amended complaint, if taken as true, establishes a cause of action against the Department for violation of the TFDA. The trial court was wrong to dismiss the complaint under Rule 12(b)(6).

On remand, the trial court should determine whether Qualls's letter of April 1, 1994, gave Allred sufficient notice under the TFDA that his contract for the 1994-1995 school year would not be recommended for renewal. For the reasons above, we reverse and remand.