Mr. Benny Magness, Chairman Arkansas Board of Corrections Post Office Box 20550 Pine Bluff, Arkansas 71612-0550
Dear Mr. Magness:
I am writing in response to your request for an opinion on two questions concerning the Arkansas Department of Correction School District. You note that Act 279 of 1973 established the Arkansas Department of Correction School District. Your questions involve whether the "Board of Corrections can change the operation of the school district in two ways." I have paraphrased your questions as follows:
 1. First, can the Board of Correction reorganize the Department of Correction School District to have the Superintendent of the School District report directly to the Board of Correction? The Superintendent currently reports to the Department of Correction Director.
 2. Second, can the Board of Correction "include a full school program to the Department of Community Correction, which was established after 1972?"
You note that the "Department of Community Correction is a sister agency to the Department of Correction and they are both under the purview of the Board of Corrections."
RESPONSE
In my opinion the answer to your first question is not entirely clear, but is in all likelihood "no" absent a change in the law. The answer to your second question may depend upon how the school program is provided to the Department of Community Correction. In my opinion the Board of Corrections may not unilaterally extend its Arkansas Department of Correction School District program to persons incarcerated in Department of Community Correction facilities. Current statutes relating to the School District do not authorize this action. It is conceivable, however, that the two departments could enter into an "Interlocal Cooperation Agreement" or other legal contract or agreement to effect this result. The legality of any such agreement would have to be evaluated with reference to its specific provisions.
Question 1—Can the Board of Correction reorganize the Department ofCorrection School District to have the Superintendent of the SchoolDistrict report directly to the Board of Correction? The Superintendentcurrently reports to the Department of Correction Director.
As you note, the Arkansas Department of Correction School District was created in 1973. See Acts 1973, No. 279, codified at A.C.A. §§ 12-29-301
to -310 (Repl. 1999). Section 12-29-301 of this subchapter provides as follows:
 (a) Properties owned by the State of Arkansas and occupied by the various units of the Department of Correction are by this subchapter designated as a school district to be known as the Department of Correction School District.
 (b) This district is created for the purpose of providing elementary, secondary, and vocational and technical education to all persons incarcerated in the Department of Correction facilities who are not high school graduates, irrespective of age.
 (c) The Board of Correction and Community Punishment shall act as the school board for the school district.
[Emphasis added.]
The original act creating and empowering the Department of Correction School District and the current subchapter governing it do not otherwise address the organizational structure of the School District. No mention is made of a "superintendent" for the district.
You have provided documents with your request indicating that the "Policies and Procedures manual for the ADC School District, which is approved by the Board, contains an organizational chart, which places the Superintendent of Schools under the Deputy Director, Health 
Correctional Programs who is under the ADC Director, who is under the ADC School Board." (August 13, 2003 Memorandum). This policy is reflected in the minutes of the July 20, 1973 Department of Correction School Board meeting, which state that: "The school district will function within the normal organizational structure of the Department of Correction. The school district as an additional component may utilize the support of all personnel, equipment, facilities, and resources of the Department." Id.
Item 12.
The question posed is whether the Board can change this state of affairs so that the Superintendent of the School District will report directly to the Board of Correction, which acts as the School District Board.
It is clear that the Department of Correction School District is a "public school district." In Allred v. Arkansas Department of CorrectionSchool District, 322 Ark. 772, 912 S.W.2d 4 (1995), the Arkansas Supreme Court held that "[w]hile the Department's school district is certainly different from other public school districts, it is clear from reading Ark. Code Ann. §§ 12-29-301 — 310 (1987 and Supp. 1993), and emergency clauses of associated acts that the General Assembly intended to establish a public school district within the Department of Correction for the benefit of both the free and the incarcerated populations." Id.
at 778. The court therefore held that the school district was subject to the provisions of the "Teacher Fair Dismissal Act," codified at A.C.A. §§6-17-1501 to -1510. In reaching this conclusion, the court quoted from A.C.A. § 12-29-303, which provides as follows:
 The schools established under the provisions of this subchapter and those persons incarcerated who attend the schools shall be entitled to all of the privileges provided generally to common public schools and adult education programs administered by the State Board of Education to students who attend them under the laws of the State of Arkansas, provided the privileges do not conflict with the rules, regulations, and policies of the Department of Correction or the laws of the state respecting the establishment and operation of the Department of Correction.
(Emphasis added).
This statute guarantees the same privileges to Department of Correction schools and inmates as are granted to the common public schools, except to the extent of any conflict with the rules, regulations and policies of the Board or with state laws. The court in Allred thus held that the "Teacher Fair Dismissal Act" was applicable to the District.
It might be suggested, under this statute, that because the Department of Correction School district is entitled to all the privileges of the common public schools, it should be authorized to have a superintendent of schools who reports directly to the school board. Ordinarily, publicly-elected school board members govern public school districts in Arkansas and the superintendent of a public school district reports directly to the school board. Cf. A.C.A. § 6-13-109 (authorizing each public school district to employ a superintendent). The statute set out above, however, makes an exception in cases in which the privileges of common public schools would conflict with Department of Correction rules, regulations, policies, or with state law. In my opinion the tenor of several provisions of state law and one statute in particular in all likelihood prohibit Board action requiring the district Superintendent to report directly to the Board.
Section 12-27-101 of the Arkansas Code provides in pertinent part as follows:
 (a)(1) The purpose of this act is to establish a Department of Correction that shall assume the custody, control, and management of the state penitentiary, execute the orders of criminal courts of the State of Arkansas, and provide for the custody, treatment, rehabilitation, and restoration of adult offenders as useful law-abiding citizens within the community.
 (2) The Department of Correction shall be under the supervision and control of the Board of [Corrections].
 (3) To accomplish the objectives and purposes of this act in an effective, coordinated, and uniform manner, the Department of Correction shall be responsible for the maintenance, supervision, and administration of adult detention and correctional services of the state as determined by the Board of Correction and Community Punishment.
(Emphasis added).
Section 12-27-103 provides in pertinent part as follows:
 (a) There is established, under the supervision, control, and direction of the Board of Correction[s], a Department of Correction.
 (b) The department shall have the following functions, powers, and duties, administered in accordance with the policies, rules, and regulations promulgated by the [Board of Corrections]:
 (1) The department shall have exclusive jurisdiction over the care, charge, custody, control, management, administration, and supervision of all persons and offenders committed to, or in the custody of, the state penitentiary;
* * *
 (4)(A) The department shall have custody, management, and control over all institutions and facilities, and the inmates therein, now belonging to the state penitentiary or hereafter established by the Department of Correction for the custodial correction and rehabilitation of persons committed to the department for its care, except for those institutions established by or transferred to the Department of Community [Corrections].
(Emphasis added).
Section 12-27-107 details the authority of the Director of the Department of Correction. It provides in pertinent part as follows:
 (d) Subject to the rules, regulations, policies, and procedures prescribed by the Board of Correction[s], the director shall:
 (1) Administer the department and supervise the administration of all institutions, facilities, and services under the department's jurisdiction. . . .
Finally, A.C.A. § 12-27-123 provides as follows:
 (a) All staff, employees, and other personnel of the Department of Correction shall be under the direct supervision and control of the Director of the Department of Correction, who shall report directly to the Board of Correction[s].
 (b) The Compliance Division, which consists of but is not limited to a compliance attorney and an auditor, shall be under the direct authority of the Board of Correction and Community Punishment.
This last-quoted provision was originally enacted in 1991, as a part of the Department of Correction appropriation act. See Acts, 1991 No. 1078, §§ 28 and 29. It was later amended in 1993 to add employees of the Compliance Division other than the attorney and auditor to the exemption in (b). See Acts 1993, No. 885 § 1.
This last-quoted statute is not entirely clear as to whether the Superintendent of the Department of Correction School District is included in the phrase "[a]ll staff, employees and other personnel of the Department of Correction." It is my understanding that personnel of the School District, including the Superintendent, are not treated as state employees and are not paid through the Department of Correction's appropriation act, but rather, by virtue of a lump sum appropriation from the Public School Fund. See Acts 2003, No. 51, § 1 (1st Ex. Sess. 2003). The statute speaks directly to the issue of the supervision of Department personnel, however, and plainly vests this duty with the Director. A specific exception is made only for employees of the Compliance Division. This statute was enacted at a time (1991 and 1993), when the Department School District was operating and the General Assembly is charged with knowledge of its existence. In my opinion, the Board's authority to exercise direct supervision over the Superintendent is less than clear in light of the statutes set out above, particularly A.C.A. § 12-27-123. I must conclude, therefore, that the answer to your first question is in all likelihood "no."
Question 2 — Second, can the Board of Correction "include a full schoolprogram to the Department of Community Correction, which was establishedafter 1972?"
You have not stated exactly in what manner or by what mechanism the Board would "include a full school program" to the Department of Community Correction. If you mean to inquire whether the Board of Corrections can simply begin using Department of Correction School District resources and personnel to provide school services to persons incarcerated in the Department of Community Correction, in my opinion the answer is "no." Current law creates the District on "[p]roperties owned by the State of Arkansas and occupied by the various units of the Department ofCorrection. . . ." A.C.A. § 12-27-301 (a). The purpose of the District is to "provid[e] elementary, secondary, and vocational and technical education to all persons incarcerated in the Department of Correctionfacilities. . . ." A.C.A. § 12-27-301(b). These statutes do not authorize the provision of school services to persons incarcerated in the Department of Community Correction.[1] That Department, as your question implies, was not in existence at the time of the creation of the Department of Correction School District in 1973.
Additionally, separate statutes require the Department of Community Correction to exercise "management and control" over all "community punishment services existing on July 1, 1993, and created thereafter." A.C.A. § 12-27-125. The Department Correction, therefore, may not, as a legal matter, simply begin providing school district services to persons incarcerated in Department of Community Correction facilities and itself manage and control those services.
Notwithstanding the language of the statutes above, a number of state statutes empower the Department of Correction and the Department of Community Correction to cooperate in the provision of correctional and rehabilitative services. Section 12-27-103, which sets out the powers of the Department of Correction, provides in this regard as follows:
 (b)(11) The department shall cooperate with law enforcement agencies of this state, or of the United States; with institutions of this state for the detention, custody, and care of delinquent and dependent juveniles; and with all agencies and departments of this state offering services or programs of welfare, rehabilitation, and other services for the benefit of persons committed to the department;
* * *
 (15) The department shall cooperate with the Department of Community [Correction], the Post Prison Transfer Board, the Arkansas Sentencing Commission, judicial districts, municipalities, and counties in this state in providing guidance and services required to ensure a full range of correctional options for the state as a whole.
Section 12-27-125, which sets out the powers of the Department of Community Correction, provides in pertinent part that:
 (b)(15) The department may cooperate and contract with the federal government, with governmental agencies of Arkansas and other states, with political subdivisions of Arkansas, and with private contractors to provide and improve community punishment options. . . .
Section 12-27-126, which sets out the powers of the Director of the Department of Community Correction, provides in pertinent part that:
 (d) Subject to the rules, regulations, policies, and procedures prescribed by the board, the director shall:
* * *
 (5) Cooperate with the Department of Correction, the Post Prison Transfer Board, the Arkansas Sentencing Commission, judicial districts, counties, and municipalities to provide the guidance and services required to ensure a full range of correctional and community punishment options for the state as a whole.
In addition, relevant provisions of the "Interlocal Cooperation Act," codified at A.C.A. §§ 25-20-101 — to 108, authorize "public agenc[ies]," including school districts and state agencies, to enter into cooperative agreements for the joint provision of services. Specifically, § 25-20-104
provides that:
 (a) Any governmental powers, privileges, or authority exercised or capable of exercise by a public agency of this state alone may be exercised and enjoyed jointly with any other public agency of this state which has the same powers, privileges, or authority under the law. . . .
 (b) Any two (2) or more public agencies may enter into agreements with one another for joint cooperative action pursuant to the provisions of this chapter. Appropriate action by ordinance, resolution, or otherwise pursuant to law of the governing bodies of the participating public agencies shall be necessary before the agreement may enter into force.
"Public agency" is specifically defined as including ". . . any schooldistrict, any political subdivision of this state, any agency of thestate government or of the United States. . . ." A.C.A. § 25-20-103 (1).
It is conceivable, under the statutes set out above, that the Department of Correction and the Department of Community Correction could enter into some type of cooperative agreement or contract with reference to the provision of educational services to persons incarcerated in the Department of Community Correction. The legality of any such agreement or contract would have to be evaluated with reference to all of its provisions.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Although there is a provision in the Department of Correction's appropriation act that authorizes a "transfer of positions, programs, funds, appropriations and line-item appropriations" within or between divisions or units of the departments, it does not appear that this is contemplated by your question. See Acts 2003, No. 51, § 28 (1st Ex. Sess.). Such action, in any event, requires approval of the Governor and either the Legislative Council or Joint Budget Committee and is subject to other limitations. Id.