The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, Arkansas 72022-4025
Dear Senator Broadway:
I am writing in response to your request for an opinion on two questions concerning teachers in the Corrections School System (known as the "Arkansas Correctional School"). Your first question relates to teachers who are licensed under the Non-Traditional Licensure Program ("NTL Program"), established pursuant to A.C.A. § 6-17-409 (Supp. 2007). You note that under the relevant Arkansas Department of Education ("ADE") rules, teachers who are licensed under the NTL Program must teach in a "traditional classroom setting." See ADE Rules Governing theNon-Traditional Licensure Program, Rule 9.03 (July, 2007). You ask in this regard:
 1. Do Arkansas Correctional School teachers who daily teach in our prisons in classrooms that are very similar to any public school classroom and who annually produce one of the largest graduating classes (GED) of any school district in the state, have the same privilege as other teachers from Arkansas school districts to participate in the Non-Traditional Licensure Program? In other words, can the requirement for a "traditional classroom setting" validly be used by the Department of Education to exclude the Arkansas Correctional School? *Page 2 
Your second question pertains to licensure as a school administrator. You ask specifically:
 2. Can the Department of Education disqualify Arkansas Correctional School teachers from participating in university administrator licensing programs that include administrative internships within the Arkansas Correctional School?
RESPONSE
As your first question suggests, the "traditional classroom setting" requirement under Rule 9.03 is interpreted by the ADE to exclude the Arkansas Correctional School, meaning that those who are licensed under the NTL Program cannot teach in the Correctional School. At issue under your first question, therefore, is whether the ADE can validly impose this requirement. The answer is "yes," in my opinion. The answer to your second question concerning administrator licensure is also "yes," in my opinion.
Question 1 — Do Arkansas Correctional School teachers who daily teach inour prisons in classrooms that are very similar to any public schoolclassroom and who annually produce one of the largest graduating classes(GED) of any school district in the state, have the same privilege asother teachers from Arkansas school districts to participate in theNon-Traditional Licensure Program? In other words, can the requirementfor a "traditional classroom setting" validly be used by the Departmentof Education to exclude the Arkansas Correctional School?
The statute governing nontraditional licensure certification provides as follows:
 (a) The Department of Education may offer and operate a nontraditional licensure program.
 (b) The department is hereby authorized to provide grants of financial assistance to entities that train individuals seeking to obtain nontraditional licensure certification through the nontraditional certification process administered by the department. The department shall pay the grants from funds appropriated by the General Assembly to the department for such purpose. *Page 3 
 (c) The department is hereby authorized to promulgate rules and regulations to determine eligibility for and amount of awards of the grants concerning the operation of the nontraditional licensure program authorized by this section and for such other purposes as may be necessary in carrying out the intent of this section.
 (d) If the department requires an applicant for nontraditional licensure certification to complete one (1) or more additional college-level courses and the applicant has obtained a bachelor's degree, the required course or courses shall meet one (1) or more of the following conditions:
 (1)(A) Each course shall be offered at every state-supported, two-year institution of higher education.
 (B) If more than one (1) course is required, all courses shall be offered in a one-semester block; or
 (2) Each course shall be available as an online course, a traditional face-to-face course, or a hybrid course that is part online instruction and part face-to-face instruction, as approved by the department.
A.C.A. § 6-17-409 (Supp. 2007).
This statute plainly authorizes the ADE to "offer and operate a nontraditional licensure program." A.C.A. § 6-17-409(a). It also plainly establishes the ADE's regulatory power with respect to the NTL Program.Id. at (c). The legislative intent to vest the ADE with broad authority over this licensing program is evident. Acting under that authority, the ADE has promulgated Rules Governing the Non-Traditional LicensureProgram (July, 2007). These rules provide, inter alia, that "NTL teachers must teach in a traditional classroom setting." Id. at Rule 9.03 (emphasis added). I am informed that the ADE interprets this to exclude the Corrections School System, which was created under A.C.A. § 12-29-301.[1] That *Page 4 
interpretation must be given considerable deference, particularly where, as here, it appears consistent with the rule's plain meaning. Seegenerally Clinton v. Rehab Hospital Services Corp., 285 Ark. 393,688 S.W.2d 272 (1985) (observing that an agency's interpretation of its own rules, while not binding, will be controlling unless plainly erroneous or inconsistent.) It seems beyond question that a school in the Corrections School System is not a "traditional classroom setting." The ADE's interpretation will in my opinion consequently be upheld, and the rule will withstand scrutiny unless it is contrary to A.C.A. § 6-17-409
or some other statute. See generally Arkansas Dept. Human Serv. v.Hillsboro Manor Nursing Home, Inc., 304 Ark. 476, 480, 803 S.W.2d 891
(1991) ("[A]n administrative agency's interpretation of a statute or its own rules will not be overturned unless it is clearly wrong.")
I cannot state that the ADE's interpretation of the laws and its licensure regulations is clearly wrong. According to my review, the legislature has enacted no law that might be read as restricting or otherwise constraining the ADE's broad authority to "offer and operate a nontraditional licensure program." Accordingly, I do not believe the ADE is under any obligation to develop the program in such a way as to ensure that those licensed under the NTL Program will be able to teach in the Arkansas Correctional School. In reaching this conclusion, I have taken into consideration the Arkansas Supreme Court's ruling, which you have noted, that the Correctional School is a "public school district as a matter of law." Allred v. Arkansas Department of Correction SchoolDistrict, 322 Ark. 772, 779, 912 S.W.2d 4 (1995). In Allred, the Arkansas Supreme Court held that "[w]hile the Department's school district is certainly different from other public school districts, it is clear from reading Ark. Code Ann. §§ 12-29-301 — 310 (1987 and Supp. 1993), and emergency clauses of associated acts that the General Assembly intended to establish a public school district within the Department of Correction for the benefit of both the free and the incarcerated populations." Id. at 778. Among other provisions, the court quoted A.C.A. § 12-29-303, which at the time provided: *Page 5 
 The schools established under the provisions of this subchapter and those persons incarcerated who attend the schools shall be entitled to all of the privileges provided generally to common public schools and adult education programs administered by the State Board of Education to students who attend them under the laws of the State of Arkansas, provided the privileges do not conflict with the rules, regulations, and policies of the Department of Correction or the laws of the state respecting the establishment and operation of the Department of Correction.[2]
Based upon this and several other provisions, the court held that the Department of Correction school had a "responsibility to operate under the law as a publicly supported school district[,]" and that is was subject to the provisions of the Teacher Fair Dismissal Act, which governs the dismissal of teachers within the state's public school system. Id. at 779.
In my opinion, this ruling does not establish or support the proposition that NTL teachers must be allowed to teach in the Arkansas Correctional School. As the court in Allred seemed to recognize, the Correctional School is obviously different from other school districts. The ADE in my opinion may take this difference into account when developing the NTL Program. I recognize that pursuant to A.C.A. § 12-29-303, supra at n. 2, the Correctional School and inmates are "entitled to certain educational privileges provided generally to common public schools. . . ." I have found no support, however, for the proposition that the use of NTL licensed teachers is a "privilege" as contemplated by this statute. It is also of note that any such "privileges" are subject to "the rules and policies of the State Board of Education." Id. This must be read to include licensure requirements developed *Page 6 
through the ADE. See A.C.A. § 6-15-403(4) (Supp. 2007) (charging the State Board of Education "through the Department of Education" with the duty to "establish . . . licensure requirements for all school-based personnel, and prescribe rules in accordance with initial, standard, and provisional licenses[.]") The ADE's authority under A.C.A. § 6-17-409
with respect to the NTL Program is in all respects consistent with this charge to administer the licensure of school-based personnel. Accordingly, the Rules Governing the Non-Traditional LicensureProgram probably supersede any claim of "privilege" pursuant to A.C.A. § 12-29-303.
In sum, the ADE in my opinion did not exceed its statutory authority when it imposed the requirement that "NTL teachers must teach in a "traditional classroom setting," which requirement, as interpreted by the ADE, excludes the Arkansas Correctional School.
Question 2 — Can the Department of Education disqualify ArkansasCorrectional School teachers from participating in universityadministrator licensing programs that include administrative internshipswithin the Arkansas Correctional School?
The answer to this question is "yes," in my opinion, based upon the ADE's role as the licensing agency for those seeking an administrator license. Arkansas Code Annotated § 6-17-402 provides in relevant part:
 (a) As used in this section, "certified teaching license" means the license of a licensed classroom teacher, an administrator, a guidance counselor, or a librarian issued by the State Board of Education.
 (b)(1) The State Board of Education shall promulgate rules and regulations for the issuance, licensure, relicensure, and continuance of licensure of teachers in the public schools of this state.
A.C.A. § 6-17-402 (Supp. 2007) (emphasis added.) See also A.C.A. § 6-15-403(4) (Supp. 2007) ("The State Board of Education through the Department of Education shall establish . . . licensure requirements for all school-based personnel, and prescribe rules in accordance with initial, standard, and provisional licenses[.]"). *Page 7 
Additionally, in accordance with A.C.A. § 25-6-101 (Repl. 2002), "all authority and responsibility of the State Board of Education [shall] be administered through the Department of Education. . . ."
These statutes plainly establish the ADE's regulatory authority over the licensure of, inter alia, school administrators. Similar to the above analysis regarding the Non-Traditional Licensure Program, I see nothing in the statutes to prevent the ADE from excluding the Arkansas Correctional School as a setting for an administrative internship.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] Subsection 12-29-301 established the system as follows:
 Properties owned by the State of Arkansas and occupied by the various units of the Department of Correction and the Department of Community Correction are by this subchapter designated as a qualified school district to be known as the "Corrections School System".
 The system is created for the purpose of providing elementary, secondary, and vocational and technical education to qualified persons incarcerated in facilities of the Department of Correction and the Department of Community Correction or to qualified persons supervised by the Department of Community Correction, including those on probation and parole or any type of post prison release or transfer who are not high school graduates, irrespective of age.
A.C.A. § 12-29-301(a) and (b) (Supp. 2007).
[2] The statute was subsequently amended to state:
 A school established under this subchapter and a person incarcerated who attends the school shall be entitled to certain educational privileges provided generally to common public schools and adult education programs administered by the State Board of Education to students who attend the common public schools and adult education programs under the laws of the State of Arkansas, provided the privileges do not conflict with the rules and policies of the State Board of Education, the Department of Correction, and the Department of Community Correction or the laws of the state respecting the establishment and operation of the Department of Correction and the Department of Community Correction.
A.C.A. § 12-29-303 (Supp. 2007). *Page 1